**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

ORTHO-TAIN, INC., a corporation,            )
      Plaintiff,            )
  vs.            )
COLORADO VIVOS THERAPEUTICS, INC.,            )  Case No. 1:20 cv 4301
VIVOS THERAPEUTICS, INC.,            )
BENCO DENTAL SUPPLY CO., BRIAN KRAFT, )
BEN MIRAGLIA, MARK MUSSO and            )
KIRK HUNTSMAN,            )
      Defendants            )

**COMPLAINT AT LAW**

NOW COMES plaintiff, Ortho-Tain, Inc., through counsel, and for its Complaint against defendants alleges as follows:

**PARTIES**

1.  Ortho-Tain, Inc. ("Ortho-Tain") is a corporation registered under the laws of Puerto Rico, with a principal place of business in Toa, Alta, Puerto Rico.

2.  Ortho-Tain is in the business of manufacturing and selling pre-formed, removable orthodontic appliances used in the treatment of a variety of medical conditions, including malocclusions, narrow arches, underdeveloped airways and their associated health issues, including sleep disordered breathing. ("*HealthyStart® System* appliances")

3.  Through its founder, Dr. Earl Bergersen, Ortho-Tain has a 53-year history as an innovator and developer of treatment modalities to address the underlying root causes of pediatric sleep, breathing, and airway deficiencies by promoting and guiding growth of the pediatric patient, through the use of oral appliances, and addressing improper oral habits.

4.  Dr. Bergersen and Ortho-Tain have approximately 511 patents registered for such oral appliances, and Ortho-Tain's proprietary system, including its *HealthyStart® System*, has successfully helped with the treatment of more than four (4) million patients to date.

1

5. Ortho-Tain, through its *HealthyStart®* division, is also a service provider which trains dentists, pediatric dentists, and orthodontists (collectively "dental professionals") in their use of *HealthyStart® System* appliances and related Ortho-Tain products comprising the *HealthyStart® System*. Through the *HealthyStart® System*'s treatment plan review service, dental professionals are able to obtain case-specific feedback, product and treatment option information and recommendations for using Ortho-Tain's oral appliances.

6. Colorado Vivos Therapeutics, Inc. ("Colorado Vivos") is a corporation organized under the laws of Colorado and with a principal place of business situated at 9137 Ridgeline Blvd., Suite 135, Highlands Ranch, Colorado.

7. Defendant Colorado Vivos was originally incorporated on or about January 9, 2017 under the name "Corrective BioTechnologies, Inc." and thereafter submitted articles of amendment with the Colorado Secretary of State on at least three occasions so as to change its corporate name. On or about February 2, 2018, this defendant's corporation's name was changed to "Vivos BioTechnologies, Inc." On or about March 5, 2018 this defendant's corporation's name was changed to "Vivos Therapeutics, Inc" and on or about April 11, 2019 this defendant's corporation's name was changed to "Colorado Vivos Therapeutics, Inc."

8. Defendant Vivos Therapeutics, Inc. is a corporation organized under the laws of Wyoming and with a principal place of business situated at 9137 Ridgeline Blvd., Suite 135, Highlands, Colorado. This defendant was originally incorporated on or about July 7, 2016 under the name "Corrective Biotechnologies, Inc." It filed amendments with the Wyoming Secretary of State's offices, on or about September 6, 2016 to effectuate a name change to "Vivos Biotechnologies, Inc." On or about March 2, 2018, this defendant filed another amendment so as to change its corporate name to "Vivos Therapeutics, Inc."

2

9. Defendant Kirk Huntsman is the founder of defendant "Colorado Vivos" and of defendant "Vivos Therapeutics, Inc." The use of the name "Vivos" in this Complaint shall refer to Colorado Vivos or, in the alternative, to Vivos Therapeutics, Inc., or, in the alternative, to both.

10. Vivos is in the business of selling its "Vivos Guide System," including oral appliances, to dental professionals who treat, among others, *pediatric* patients presenting with certain medical conditions, including malocclusions, narrow arches and underdeveloped airways, and their associated health issues, including the underlying root causes of sleep disordered breathing.

11. Defendant Ben Miraglia is a dentist, a Vivos "Clinical Advisor," and a resident of the state of New York with offices at 280 N Bedford Rd., Mt. Kisco, New York.

12. Defendant Brian Kraft is a dentist, a Vivos "Clinical Advisor" and a resident of the state of Utah with offices at 107 S 500 W., Payson, Utah.

13. Defendant Mark Musso is a dentist, a Vivos "Clinical Advisor" and a resident of the state of Texas, with offices at 513 W Centerville Rd., Garland, Texas.

14. Benco Dental Supply Co. ("Benco") is a Pennsylvania corporation with corporate headquarters located at 295 CenterPoint Blvd., Pittston, Pennsylvania.

15. Benco is a distributor of dental supplies and equipment and a provider of dental consulting and dental equipment services.

## JURISDICTION

16. This Court has jurisdiction over the claims asserted in Counts I and VI (Violation of Lanham Act, 15 U.S.C. §1125(a)) pursuant to 28 U.S.C. §1331. This Court enjoys supplemental jurisdiction pursuant to 28 U.S.C. §1367 over the related state law claims for civil conspiracy

(Counts II-IV and VII-X), breach of Non-Compete Agreement (Count V) and breach of Non-Disclosure Agreement (Count XI).

## VENUE

17.     Venue in the United States District Court for the Northern District of Illinois is appropriate under 28 U.S.C. §1391 because the defendants directed their marketing and sales activities at customers in this forum, the claims at issue arise out of or relate to those activities and where the written contracts at issue in Counts V and XI (Exs.A-B) contain choice of laws and venue/forum selection clauses providing that any legal disputes between the parties are to be governed by and construed under the laws of Illinois and that jurisdiction and venue for all such purposes shall be in Cook County, Illinois.

## FACTUAL ALLEGATIONS

18.     In April of 2018, Dr. Kraft and Ortho-Tain entered into a written "HealthyStart Speaking Agreement" pursuant to which Dr. Kraft agreed to perform services as a "HealthyStart Lecturer" to give presentations to pediatricians, ENT specialists and/or dental professionals regarding the use of Ortho-Tain's oral appliances and its HealthyStart System for the treatment of, *inter alia*, malocclusions, narrow arches, and underdeveloped airways, and their associated health issues, including sleep disordered breathing.

19.     A true and correct copy of the HealthyStart Speaking Agreement with Dr. Kraft is attached as Ex.A.

20.     In June of 2014, Kirk Huntsman and Ortho-Tain entered into a written, Non-Disclosure Agreement ("NDA"), pursuant to which Ortho-Tain agreed to and did provide Mr. Huntsman with certain Confidential Information regarding Ortho-Tain's plans for the marketing,

sale and distribution of certain orthodontic appliances and procedures to be manufactured and developed by Ortho-Tain.

21.    A true and correct copy of the written, non-disclosure agreement between Ortho-Tain and defendant Huntsman is attached as Ex.B.

22.    In June of 2014 and continuing from time to time thereafter, Ortho-Tain provided Confidential Information to defendant Huntsman which included Ortho-Tain's proprietary research data, including on cranio-facial measurements, airway development, and maxillary and mandibular bone growth and development.

23.    Additionally, Ortho-Tain provided defendant Huntsman with product exemplars of Ortho-Tain's proprietary, transverse measurement ruler, its *Nite-Guide*® and *Occlus-o-Guide*® oral appliances, its Initial Patient/Parent Questionnaire, its Compliance Charts, and its written instructions on proper patient use and techniques for assessing development and planning, and for taking measurements and progress photos to be submitted to Ortho-Tain for its review and feedback recommendations on future Ortho-Tain oral appliance prescriptions.

24.    Ortho-Tain provided Mr. Huntsman access to a wealth of research data on cranial-facial growth and development, compiled over several decades, and contained within esoteric journals, pediatric patient case records, photographs, charts, diagrams, videos and Power Point slides.

25.    Through Ortho-Tain, defendant Huntsman was made aware of, introduced or referred to defendants Drs. Ben Miraglia, Brian Kraft and Mark Musso.

26.    As of August 8, 2019, and for all times relevant thereafter, there existed an agreement between Benco and Vivos by which Benco would be paid compensation in exchange

for Benco's marketing of the "Vivos System" and/or Benco's sponsorship of one or more of Vivos' marketing and/or sales presentations.

27.     On August 8, 2019 Benco and/or Vivos issued a news release which announced that Benco had formed a 'strategic alliance' with Vivos to collaborate and "*help make all dentists in the United States aware*" of Vivos' "*unique apnea treatment.*" A true and correct copy of the Vivos/Benco 'strategic alliance' announcement is attached as <u>Ex.C</u>.

28.     The Vivos/Benco news release (<u>Ex.C</u>) stated that Benco had signed a cooperative agreement with Vivos "*to help broaden the Vivos System's reach and ensure all dentists in the United States are aware of their patented system for treating obstructive sleep apnea.*"

29.     The Vivos/Benco public announcement (<u>Ex.C</u>) stated that Benco's partnership with Vivos would include a "*series of events beginning in October 2019*" as well as twenty-seven (27) seminars, one in every Benco sales territory, during the first quarter of the year 2020.

30.     The Vivos/Benco public announcement (<u>Ex.C</u>) also stated that "*Benco customers in all 50 states will have an in-person opportunity to learn more about the treatment, how it helps OSA suffers and increases the practitioner's value to patients, plus helpful resources available for integrating it into their practice*."

31.     On August 16, 2019 Benco announced, through its website, that it had '*signed a cooperative agreement with Vivos Therapeutics, a company that focuses on addressing the causes of mild to moderate obstructive sleep apnea (OSA).*" A true and correct copy of Benco's announcement as aforesaid is attached as <u>Ex.D</u>.

32.     The Benco website announcement (<u>Ex.D</u>), stated that the Vivos System made use of '*revolutionary technology*' and represented the "*first-ever hope for a lasting solution to the problem of sleep apnea.*"

6

33. One of the planned seminars that Benco sponsored pursuant to its agreement with Vivos was a "continuing education course" entitled "*Learn How the Vivos System Induces the Remodeling of Human Airway Tissues*". ("Vivos System course")

34. The "Vivos System course" was presented via an on-line webinar broadcast and/or live to attendees on the following dates and/or in the following cities: 1/29/20 (Roswell, GA), 1/30/20 (Raleigh, NC), 2/7/20 (Flower Mound, TX), **2/7/20 (St. Louis, MO)**, 2/20/20 (Charlotte, NC), 2/20/20 (Houston, TX), 2/21/20 (Costa Mesa, CA), 2/27/20 (Fresno, CA), 2/28/20 (Omaha, NE), 2/28/20 (Newark, CA), 3/11/20 (Philadelphia, PA), 3/12/20 (McLean, VA), 3/13/20 (Florence, IN), 3/13/20 (Philadelphia, PA), 3/19/20 (Hauppauge, NY), 3/19/20 (Live Webinar), 3/19/20 (Burlington, MA), 3/20/20 (Tempe, AZ), 3/20/20 (Colorado Springs, CO), 3/20/20 (Live Webinar), 3/26/20 (Independence, OH), 3/26/20 (Live Webinar), 3/26/20 (Livonia, MI), 3/27/20 (Renton, WA), 3/27/20 (Hollywood, FL), and 3/27/20 (Live Webinar).

**Vivos System Course – February 7, 2020 – Dr. Brian Kraft**

35. As of not later than February 7, 2020, defendants Brian Kraft and Vivos had entered into an employment contract or other services agreement pursuant to which Dr. Kraft was publicly identified and marketed by Vivos as one of its "Clinical Advisors."

36. On February 7, 2020, Dr. Kraft appeared in St. Louis, Missouri, in his capacity as a Vivos "Clinical Advisor," and presented one segment of the "*Learn How the Vivos System Induces the Remodeling of Human Airway Tissues*" course.

37. Attendees of the 2/7/20 Vivos System course presentation were informed by one or more Vivos' presenters, including Dr. Kraft, that Vivos had a treatment "system" and/or an oral appliance that could be used for the treatment of *pediatric* dental patients suffering from sleep disordered breathing, including mild to moderate obstructive sleep apnea.

38.     On 2/7/20 Brian Kraft showcased the favorable results achieved in at least six pediatric patient-cases, identified in photographs/Power-Power slides as "Isaac" "Allie" "Ava" "Ella" "Matthew" and "Nicholas".

39.     True and correct copies of the Vivos Course advertisement for Dr. Kraft's 2/7/20 presentation, along with photographs/slides taken at the February 7, 2020 presentation of Dr. Kraft and of the six pediatric case studies showcased, are attached as Group Ex.E.

40.     In fact, *none* of the six pediatric patient cases presented by Dr. Kraft on 2/7/20 had ever been treated with the Vivos System or any "Vivos" oral appliances.

41.     Instead, the *true* source or origin for the favorable pediatric patient treatment outcomes showcased by Dr. Kraft on 2/7/20 was Ortho-Tain, through the implementation of its *HealthyStart® System* and using Ortho-Tain's patented, oral-appliances.

42.     True and correct copies of select Ortho-Tain/HealthyStart records for each of the six pediatric cases, including pictures, invoices and appliance order forms are attached hereto as Group Ex.F.

43.     Neither Ortho-Tain nor its *HealthyStart® System* were credited for the aforementioned six pediatric case study results presented by Dr. Kraft on 2/7/20.

44.     Vivos does not own or hold the rights to *any* patents for oral appliances used for the treatment of *pediatric* patients with medical conditions causing sleep disordered breathing issues.

45.     Benco benefitted financially from the presentation of the Vivos System course in that Benco was paid a portion or percentage of the revenues or profits generated from the sale of the Vivos "system" and/or Vivos oral appliances to the dental professional-attendees referred to

8

Vivos or resulting from Benco's sponsorship of the Vivos System course presentations, including the presentation by Dr. Kraft on February 7, 2020 in St. Louis, MO.

46.     Dr. Kraft benefitted in that he was compensated by Vivos for Dr. Kraft's services as a Vivos Clinical Advisor, including for Dr. Kraft's presentation of one or more segments of the Vivos System course in St. Louis, Missouri on February 7, 2020.

47.     Vivos benefitted financially by virtue of its agreements with Benco and Dr. Kraft in that Benco's members and customers were referred or introduced to credentialed pitchmen, such as Dr. Kraft, as well as Vivos sales' representatives, who then proceeded to sell subscriptions to the very same attendees who had been misled into believing that Vivos had either an oral appliance or a "system" with a demonstrable record of successfully treating pediatric patients presenting with sleep disordered breathing issues.

## COUNT I
## VIOLATION OF LANHAM ACT BY VIVOS

48.     Plaintiff incorporates the allegations set forth in ¶¶1-47 for this paragraph as if set forth in full.

49.     The Lanham Act, at 15 U.S.C. §1125(a), provides in pertinent part that "*Any person who shall affix, apply, or annex, or use in connection with any goods or services a false designation of origin, or any false designation or representation and shall cause such goods or services to enter into commerce shall be liable to a civil action by any person who believes that he is or is likely to be damaged by the use of any such false designation or representation.*".

50.     Vivos knew that pediatric patients showcased in its' "Vivos System" courses, including the six pediatric cases presented by Dr. Kraft on 2/7/20, had never been treated with any Vivos oral appliance or Vivos "system."

51.     Dr. Kraft and/or Vivos knew that the favorable pediatric case studies results presented had been achieved through the implementation of the *HealthyStart® System* and/or using only Ortho-Tain's patented, oral appliances.

52.     Notwithstanding its knowledge of the true source or origin for the favorable pediatric case study results, Vivos, through its agents, including defendants Huntsman, Musso, Miraglia and/or Dr. Kraft, affixed the name "Vivos" on each of the pediatric case study photographs presented to attendees of the Vivos System courses, including the six pediatric patients presented by Dr. Kraft on 2/7/20 in St. Louis, Missouri, as depicted in Group Ex.E.

53.     Notwithstanding its knowledge of the true source or origin for the favorable pediatric case study results, Vivos, through its presenting Clinical Advisors, including Dr. Kraft, falsely represented that Vivos had "revolutionary" technology, in the form of a "Vivos Guide" oral appliance, that could be used to treat *pediatric* patients with sleep disordered breathing issues caused by medical conditions such as malocclusions, narrow arches and underdeveloped airways.

54.     The Vivos System course's title - "*Learn How the Vivos System Induces the Remodeling of Human Airway Tissues,*" along with Vivos' Clinical Advisors' presentations of pediatric case study photographs labeled "Vivos," were designed to and did have the effect of confusing and misleading the attendees of the Vivos System courses into logically, yet *incorrectly,* concluding or believing that the favorable pediatric case study results showcased had been achieved by Vivos, instead of the true source or origin, Ortho-Tain.

55.     The conduct of Vivos and its "Clinical Advisors," including Dr. Kraft, was a purposeful attempt to misappropriate or profit from Ortho-Tain's talents and workmanship.

56.     At the conclusion of the presentation of the Benco-sponsored Vivos System seminars and "continuing education" courses, including the "Vivos System" course presented by

Dr. Kraft on 2/7/20 in St. Louis, MO, Vivos caused its goods or services to be entered into commerce in that course attendees were invited and directed to meet with on-site Vivos sales' staff who then solicited and sold Vivos' oral appliances and/or service subscriptions to become trained or certified in the Vivos "system."

57. Ortho-Tain has suffered damages as a result of defendants' wrongful conduct in that Vivos and Benco diverted sales, and involuntarily deprived Ortho-Tain of the advertising value of its name and of the goodwill that otherwise would stem from public knowledge of the true source of the satisfactory pediatric oral appliance-products and the favorable results achieved through the implementation of Ortho-Tain's *HealthyStart® System*.

58. Attendees of the Benco-sponsored "Vivos System courses," as identified herein, were also deprived of knowing the true source or origin of the pediatric oral appliance products used to achieve the favorable results showcased, and were deceived into believing that the favorable results had been achieved by a different source – Vivos – which had affixed its name on each of the pediatric case study photographs showcased by Dr. Kraft in the 2/7/20 "Vivos System" course in St. Louis, Missouri, and attached as Ex.E.

WHEREFORE, Ortho-Tain, Inc. respectfully prays that the Court:

(a) enter a judgment in its favor and against defendant Vivos on Count I;

(b) order that any compensation, profit or benefit received by Vivos as a result of its' conduct in violation of the Lanham Act be disgorged and instead awarded to Ortho-Tain as money damages;

(c) award Ortho-Tain its' reasonable attorneys' fees and court costs incurred in prosecuting its legal claims; and

11

(d) grant Ortho-Tain such other and further relief, including an award of treble damages, as permitted by law.

## COUNT II
## CIVIL CONSPIRACY BY VIVOS

59.     Plaintiff incorporates the allegations set forth in ¶¶1-58, for this paragraph as if set forth in full.

60.     For all times relevant there was an agreement between Vivos and Benco whereby each knowingly and voluntarily participated in a common scheme to commit an unlawful act or a lawful act in an unlawful manner.

61.     Benco and Vivos understood the general objectives of the conspiratorial scheme, which were to profit from the sale of Vivos' goods and/or services to attendees of "Vivos System" courses.

62.     Benco assisted with the planning and, through its website-announcement and representations and its sponsorship of the "Vivos System" courses, encouraged and facilitated Vivos' unlawful false designation of source or origin conduct violative of the Lanham Act.

63.     Benco accepted and agreed and acted overtly to further the general objectives of the conspiratorial scheme by publishing one or more announcements on its website, which marketed Vivos' "revolutionary" technology, and through its sponsorship of the "Vivos System" courses, which were made available to Benco's members at no charge.

64.     Vivos understood the general objectives of the conspiratorial scheme and, toward that end, took action in furtherance of the conspiracy by affixing the "Vivos" name to certain pediatric case study photographs or Power Point-format slides, and showcased by its "Clinical Advisors," including Dr. Kraft, with whom Vivos had contracted to provide presentations.

65. Vivos' accepted and agreed and acted overtly to further the general objectives of the conspiratorial scheme by retaining certain "Clinical Advisors," including Dr. Kraft, to give lectures or presentations to attendees of the Benco-sponsored "Vivos System" courses, and by making use of "Vivos" labeled photographs of pediatric patients who had, in fact, obtained their favorable results itn treatment of their sleep disordered breathing issues through the use of Ortho-Tain's patented, oral appliances and the implementation of its *HealthyStart® System*.

66. Ortho-Tain has suffered damages as a result of defendants' wrongful conduct in that Vivos and Benco diverted sales and involuntarily deprived Ortho-Tain of the advertising value of its name and of the goodwill that otherwise would stem from public knowledge of the true source of the satisfactory pediatric oral appliance-products and the favorable results achieved through the implementation of its *HealthyStart® System*.

67. Attendees of the Benco-sponsored "Vivos System courses," as identified herein, were also deprived of knowing the true source or origin of the pediatric oral appliance products used to achieve the favorable results showcased, and were deceived into believing that the favorable results had been achieved by a different source – Vivos.

WHEREFORE, Ortho-Tain, Inc. respectfully prays that the Court:

(a) enter a judgment in favor of Ortho-Tain and against the Vivos defendants on Count II;

(b) order Vivos to account for and disgorge the compensation, profits or other benefit received by it as a result of its conspiratorial conduct to violate the Lanham Act and that same be awarded to Ortho-Tain as money damages;

(c) award Ortho-Tain its' reasonable attorneys' fees and court costs incurred in prosecuting its Complaint; and

(d) grant Ortho-Tain such other and further relief as may be permitted by law.

## COUNT III
## CIVIL CONSPIRACY BY BENCO

68.     Plaintiff incorporates the allegations set forth in ¶¶1-67, for this paragraph as if set forth in full.

WHEREFORE, Ortho-Tain, Inc. respectfully prays that the Court:

(a) enter a judgment in favor of Ortho-Tain and against Benco on Count III;

(b) order that Benco account for and disgorge any compensation, profit or benefit received by it as a result of its conspiratorial conduct to violate the Lanham Act and that same be awarded to Ortho-Tain as money damages;

(c) award Ortho-Tain its' reasonable attorneys' fees and court costs incurred in prosecuting its Complaint; and

(d) grant Ortho-Tain such other and further relief as may be permitted by law.

## COUNT IV
## CIVIL CONSPIRACY BY MARK MUSSO

69.     Plaintiff incorporates the allegations set forth in ¶¶1-67 for this paragraph as if set forth in full.

70.     For all times relevant defendant Musso had an agreement with Vivos whereby Musso was compensated for services as a Vivos Clinical Advisor.

71.     Pursuant to that agreement defendant Musso gave to Vivos, through its agents, the photographs or power-point slides or other electronic reproductions of the six pediatric cases studies ("Isaac" "Allie" "Ava" "Ella" "Matthew" and "Nicholas"), identified in Group Ex.E, which were then labeled "Vivos" and showcased by defendant Kraft in his 2/7/20 presentation of the "Vivos System course" to attendees in St. Louis, Missouri.

14

72. Dr. Musso understood the general objectives of the conspiratorial scheme, accepted and agreed and acted overtly to further the general objectives of the conspiratorial scheme by providing numerous initial and progress photographs/Power-Point slides of six pediatric patients (Group Ex.E) who Dr. Musso knew to have been treated with Ortho-Tain's patented appliances.

73. Dr. Musso's conduct was deliberate and performed with knowledge of Vivos' intent to showcase the supplied photographs/slides as false-evidence of Vivos' skill, state of product development and/or of a track record of prior successes.

74. Dr. Musso's provision of the aforementioned six pediatric case study photographs/power point slides aided and facilitated Vivos in its intended goal of misleading course attendees into incorrectly believing that Vivos and its appliances or system were responsible for the favorable results showcased, instead of the true source or origin, Ortho-Tain.

75. Ortho-Tain has suffered damages as a result of defendants' wrongful conduct in that Vivos, Benco, and Dr. Musso diverted sales, and involuntarily deprived Ortho-Tain of the advertising value of its name and of the goodwill that otherwise would stem from public knowledge of the true source of the satisfactory pediatric oral appliance-products, Ortho-Tain, and the favorable results achieved through the implementation of its' *HealthyStart® System*.

WHEREFORE, Ortho-Tain, Inc. respectfully prays that the Court:

(a) enter a judgment in favor of Ortho-Tain and against defendant Musso on Count IV;

(b) order that defendant Musso account for and disgorge any compensation, profit or benefit received by him/his company as a result of his conspiratorial conduct to violate the Lanham Act and that same be awarded to Ortho-Tain as money damages;

(c) award Ortho-Tain its' reasonable attorneys' fees and court costs incurred in prosecuting its Complaint; and

(d) grant Ortho-Tain such other and further relief as may be permitted by law.

## COUNT V
## BREACH OF CONTRACT BY DR. BRIAN KRAFT

76.     Plaintiff incorporates the allegations set forth in ¶¶1-58 for this paragraph as if set forth in full.

77.     Dr. Kraft performed services pursuant to the *HealthyStart*® Speaking Agreement, Ex.A., including a May, 2018 lecture about Ortho-Tain's oral appliances and its *HealthyStart*® *System*.

78.     Ortho-Tain fully performed all obligations required of it under the *HealthyStart*® Speaking Agreement with Dr. Kraft (Ex.A).

79.     Dr. Kraft terminated the *HealthyStart*® Speaking Agreement with Ortho-Tain on April 10, 2020.

80.     The *HealthyStart*® Speaking Agreement with Dr. Kraft (Ex.A), identifies Ortho-Tain as "Company" and Dr. Kraft as "Lecturer" and provides in salient part in Section 4 that: "*Under no circumstances shall Lecturer market, sell, distribute, solicit, or be involved in any way with another manufacturer selling competitive products without the express approval of Company.*"

81.     The *HealthyStart*® Speaking Agreement with Dr. Kraft (Ex.A) also provides, in salient part, in Section 4 that "*Under no circumstances shall Lecturer sell, promote, or advertise Products of a third party website without the express written approval of Company.*"

82.     Ortho-Tain never consented to or gave its approval, express or otherwise, for Dr. Kraft's involvement as a Vivos "Clinical Advisor" and, acutely, for his services as a presenter of one segment of the Vivos System course on February 7, 2020 in St. Louis, Missouri.

16

83. Section 9 of the *HealthyStart*® Agreement with Dr. Kraft (Ex.A), is entitled "Agreement Not to Compete" and provides: "*In exchange for valuable consideration herewith provided and acknowledged, Lecturer agrees not to directly or indirectly participate in a business that is substantially similar to the business operated by the Company for at least two (2) years after the last date contractor provides any services for company. This includes participating in a substantially similar business, or as an owner, director, officer, consultant, independent contractor, employee or agent of another such business.*"

84. Section 9 of the *HealthyStart*® Agreement with Dr. Kraft (Ex.A) also provided that Dr. Kraft agreed that he would not: "*Solicit or attempt to solicit any business or trade from Company's actual or prospective clients, customers, or patients*" or "*Divert or attempt to divert business away from the company.*"

85. Dr. Kraft breached the *HealthyStart*® Agreement, Ex.A., by directly or indirectly participating in a business, Vivos, that is substantially similar to Ortho-Tain's business, when he participated as its "Clinical Advisor" and/or presenter of one segment of the "Vivos System" course on February 7, 2020 in St. Louis, Missouri.

86. Ortho-Tain has suffered damages as a result Dr. Kraft's breach of contract in that Dr. Kraft has participated as an agent for a competing company, solicited or attempted to solicit business from Ortho-Tain's actual or prospective clients, customers or patients, and has attempted to divert and has diverted business away from Ortho-Tain.

87. Ortho-Tain has suffered damages as a result of Dr. Kraft's breach of contract in that Dr. Kraft falsely represented to attendees of the 2/7/2020 "Vivos System course" that Vivos was possessed with an "Vivos Guide" oral appliance and a "system" which had achieved favorable

results in numerous *pediatric* patients, including the six pediatric caste study patients ("Isaac" "Allie" "Ava" "Ella" "Matthew" and "Nicholas") showcased by Dr. Kraft.

88.    Ortho-Tain has suffered damages as a result of Dr. Kraft's wrongful conduct that has involuntarily deprived Ortho-Tain of the advertising value of its name and of the goodwill that otherwise would have stemmed from public knowledge of the true source of the utilized pediatric oral appliance-products and that the favorable results had been achieved, not through Vivos or any system it might claim to have, but rather through the implementation of Ortho-Tain's *HealthyStart® System*.

WHEREFORE, Ortho-Tain, Inc. respectfully prays that the Court:

(a) enter a judgment in favor of Ortho-Tain and against defendant Kraft on Count V;

(b) order defendant Kraft to account for and disgorge the compensation, profits or other benefits received by him/his company to date from Vivos and/or other third-party payors of compensation for his services as a Vivos "Clinical Advisor," including as a presenting lecturer on of the Vivos System course in St. Louis, Missouri on February 7, 2020, and order that said profits be awarded to Ortho-Tain as money damages;

(c) award Ortho-Tain its' reasonable attorneys' fees and court costs incurred in prosecuting its Complaint; and

(d) grant Ortho-Tain such other and further relief as may be permitted by law.

**Vivos – 2020 Wellness Summit – March 26, 2020 – Dr. Ben Miraglia**

## COUNT VI
## VIOLATION OF LANHAM ACT BY VIVOS

89.    Plaintiff incorporates the allegations set forth in ¶¶1-15 and ¶¶20-32, for this paragraph as if set forth in full.

18

90.     The Lanham Act, at 15 U.S.C. §1125(a), provides in pertinent part that "*Any person who shall affix, apply, or annex, or use in connection with any goods or services a false designation of origin, or any false designation or representation and shall cause such goods or services to enter into commerce shall be liable to a civil action by any person who believes that he is or is likely to be damaged by the use of any such false designation or representation."*.

91.     On March 26, 2020, Dr. Ben Miraglia, in his capacity as a Vivos Therapeutics' "Clinical Advisor," presented an on-line recorded presentation to registered dental professionals for a "2020 Wellness Summit" and a segment thereof entitled "*Introduction to Patient Cases Under 18*" (the "Vivos' Wellness Summit").

92.     According to a Vivos' press release (https://www.prnewswire.com/news-releases/sleep-apnea-company-vivos-therapeutics-successfully-launches-online-training-to-healthcare-professionals-during-pandemic-301042887.html), "*Vivos sponsored its first online education and training Summit on March 26-27, featuring selected clinicians from the dental and medical arena, reaching maximum capacity in just three days, with over 500 dentists in attendance. Six additional two-day encore events were quickly scheduled twice a week thereafter to accommodate the surging demand, with some reaching maximum capacity in mere hours after posting on the event website at http://airwaysummit.com. Currently, over 4,300 healthcare professionals concerned about sleep, breathing, and wellness have registered for this novel and powerful program*."

93.     In that same press release, defendant Huntsman is quoted as having stated: "*We believe our approach represents the **world's first hope** for a potentially global solution to the estimated one billion who suffer from OSA, which is a serious and growing health epidemic," says R. Kirk Huntsman, co-founder and CEO at Vivos. "By going virtual with sleep/breathing education*

*and training, we have created an opportunity for everyone to come and learn about the latest developments in currently available treatment options.*"

94.     Vivos does not own or hold the rights to *any* patents for oral appliances used for the treatment of *pediatric* patients with medical conditions causing sleep disordered breathing issues.

95.     In the 3/26/2020 Vivos' Wellness Summit presentation Dr. Miraglia showcased the favorable results achieved in several pediatric patient-cases in photographs or Power-Point-style slides.

96.     True and correct copies of screen-shots from the March 26, 2020 Wellness Summit of three such pediatric case studies showcased by Dr. Miraglia are attached hereto as Ex.G.

97.     Dr. Miraglia's presentation of the Vivos' Wellness Summit included photographs or Power-Point slides of blue-colored oral appliances that Vivos was marketing as its' "Starter Guide" and "VG Series."

98.     A true and correct copy of the screen-shot of Dr. Miraglia's 3/26/2020 showcasing of the blue-colored appliances comprising the "Vivos Guide System" is attached as Ex.H.

99.     At the 2020 Wellness Summit, Dr. Miraglia's presentation stated to the on-line attendees "*You're going to be taught all about the Vivos' Guide System and how they're used.*"

100.    In fact, *none* of the pediatric patients, as identified in Ex.G, and presented by Dr. Miraglia on 3/26/20, had ever been treated with any Vivos appliance or "system".

101.    For example, the child identified as "Child A" (in Ex.G) showcased by Dr. Miraglia, had received his favorable results, in just six weeks' time, using only Ortho-Tain's patented, *Nite Guide*® appliance.

102.    In October of 2014, Dr. Miraglia was a paid presenter of a similar course, to the Heartland Dental group, at which time he showcased this same pediatric case study ("Child A"). In October of 2014, Dr. Miraglia correctly informed the Heartland Dental attendees that "Child A" had achieved his favorable results using only Ortho-Tain's patented *Nite Guide*® appliance for just six weeks.

103.    A true and correct copy of the screen shots of "Child A," as presented by Dr. Miraglia on October 4, 2014 at the Heartland Dental seminar are attached hereto as Group Ex.I.

104.    However, at the March, 2020 Wellness Summit, attendees were not informed of the *true* source or origin for the favorable pediatric patient treatment outcome, Ortho-Tain, but rather were lead to believe, logically, yet incorrectly, that it was a Vivos appliance or "system" that was responsible for the favorable outcome presented.

105.    At the 2020 Wellness Summit presentation Dr. Miraglia stated: "*And with the primary dentition you're going to learn about Starter Guides. And when you have primary dentition your opportunity to use Starter Guides to help these children out will be significant*."

106.    At the 2020 Wellness Summit presentation Dr. Miraglia, in presenting "Child A" stated, in the course of pitching Vivos' appliances: "*Next thing you know, with a guidance appliance and some exercises you could experience this change in just six weeks. And in just six weeks' time you can have a significant difference in the level of deep bite and the room for the teeth*."

107.    Another pediatric case showcased by Dr. Miraglia at the 2020 Wellness Summit was Child B ("Ian"), depicted in Ex.G.

108.    In October of 2014, Dr. Miraglia showcased this same pediatric case study ("Ian"), but as a paid-presenter to the Heartland Dental seminar. At that time, Dr. Miraglia correctly

informed the Heartland Dental attendees that "Ian" had achieved his favorable results using only Ortho-Tain's patented *Occlus-o-Guide*® appliance.

109.    A true and correct copy of the screen shots of "Ian" as presented by Dr. Miraglia in October of 2014 at the Heartland Dental seminar are attached hereto as Group Ex.I.

110.    By contrast, at the March, 2020 Wellness Summit attendees were not informed of the *true* source or origin for Ian's favorable pediatric patient treatment outcome, Ortho-Tain, but rather were lead to believe, logically, yet incorrectly, that it was a Vivos appliance or Vivos "system" that was responsible for Ian's favorable outcome.

111.    At the March, 2020 Wellness Summit, Dr. Miraglia's presentation included several progress photographs showing "Ian's" good results over time and included the following representations: "*By the time we are 9 years old… we can graduate from the* [Vivos] *Starter Guides into your VG Series. The idea is when you get to mixed dentition you're going to be taught how to use the VG Series Guides to deliver these type results. The idea is by the time we're 9 years old what was a crowded, collapsed deep bite is now a beautiful and appropriate overbite and overjet in the mixed dentition*."

112.    Child B/"Ian" was never treated with a Vivos appliance.

113.    Dr. Miraglia's presentation of "Ian's" case study photographs/slides at both the 2014 Heartland Institute seminar and the 2020 Wellness Summit included the same story about how Dr. Miraglia had been able to persuade "Ian" to *want* to use the oral appliance being shown to him at the initial visit. In both seminars, 2014 and 2020, Dr. Miraglia stated that he led "Ian" to believe that New York Yankee Derek Jeter had achieved his celebrity smile with oral appliances.

114.    Dr. Miraglia has never treated Derek Jeter.

115.     At the 2020 Wellness Summit Dr. Miraglia explained that, in Ian's case, the ends justified the means, stating (concurrent with the presentation of Ian's 10-month progress photo): "*But, I'm not above trickery. I'm absolutely not above trickery to help a child. So, you know, my bad. I lied to that child. My bad. I tricked a child and, uh, shame on me for tricking a child into being healthy but here we go, I got that guide into his mouth*."

116.     Another pediatric case showcased by Dr. Miraglia at the 2020 Wellness Summit was Child C ("Emma"), depicted in Ex.G.

117.     In October of 2014, Dr. Miraglia showcased this same pediatric case study ("Emma"), but as a paid-presenter at the Heartland Dental seminar. At that time, Dr. Miraglia correctly informed the attendees that "Emma" had achieved her favorable results using only Ortho-Tain's patented *Occlus-o-Guide*® appliance.

118.     A true and correct copy of the screen shots of "Emma," as presented by Dr. Miraglia in October of 2014 at the Heartland Dental seminar are attached hereto as Group Ex.I.

119.     By contrast, at the March, 2020 Wellness Summit attendees were not informed of the *true* source or origin for Emma's favorable pediatric patient treatment outcome, Ortho-Tain, but rather were lead to believe, logically, yet incorrectly, that it was a Vivos appliance or Vivos "system" that was responsible for Emma's favorable outcome.

120.     At the Wellness Summit, Dr. Miraglia's presentation of Vivos, its appliances and/or system, included several progress photographs showing Emma's good results over time, including a comparison photograph showing Emma's mouth/teeth at age "11" and at age "12.3," and concurrent with the following statement: "*So with, with the good techniques that you're going to learn and appropriate appliances…next thing you know you can experience this level of forward and wider growth and have a distinct jaw line and a beautiful separation of the head and neck,*

*and lips well ahead of the eyes, and all of a sudden a significant amount of growth and development that delivers better breathing*."

121.    Child C/Emma was never treated with a Vivos appliance.

122.    Neither the *HealthyStart® System* nor Ortho-Tain were ever credited with or for the favorable pediatric case study results presented by Dr. Miraglia at the 2020 Wellness Summit.

123.    Through its founder, Dr. Earl Bergersen, Ortho-Tain has a 53-year history as an innovator and developer of treatment modalities to address the underlying root causes of pediatric sleep, breathing, and airway deficiencies by promoting and guiding growth of the pediatric patient, through the use of oral appliances, and addressing improper oral habits.

124.    Dr. Bergersen and Ortho-Tain have approximately 511 patents registered for such oral appliances and Ortho-Tain's proprietary system, including its *HealthyStart® System*, has successfully helped with the treatment of more than four (4) million patients to date.

125.    The three pediatric patients showcased by Vivos, through Dr. Miraglia at the 2020 Wellness Summit on 3/26/2020 (Ex.G) had received their *HealthyStart® System* treatment, using *only* Ortho-Tain's patented, oral appliances as of the year 2014 - years before Vivos even had a corporate existence, whether in it be in Wyoming or in Colorado.

126.    Benco was a sponsor of the 2020 Wellness Summit.

127.    Benco benefitted financially from Dr. Miraglia's presentation at the 2020 Wellness Summit in that Benco was paid a portion or percentage of the revenues or profits generated from the sale of the Vivos "system" and/or Vivos oral appliances to the dental professional-attendees referred to Vivos or resulting from Benco's sponsorship of the 2020 Wellness Summit.

128.    Dr. Miraglia was compensated by Vivos for his services as its Clinical Advisor, including for his presentation at the 2020 Wellness Summit in March of 2020 as alleged herein.

129.    Vivos benefitted financially by virtue of its agreements with Benco and Dr. Miraglia in that Benco's members and customers were referred or introduced to credentialed pitchmen, such as Dr. Miraglia, as well as Vivos sales' representatives, who then proceeded to sell subscriptions to the very same attendees who had been misled into believing that Vivos had either an oral appliance or a "system" with a demonstrable record of successfully treating pediatric patients presenting with sleep disordered breathing issues.

130.    The conduct of Vivos and its "Clinical Advisors," including Dr. Miraglia, was a purposeful attempt to misappropriate or profit from Ortho-Tain's talents and workmanship.

131.    At the conclusion of the presentation of the 2020 Wellness Summit Vivos caused its goods or services to be entered into commerce in that on-line seminar course attendees were invited and directed to connect with Vivos sales' staff who then solicited and sold Vivos' oral appliances and/or service subscriptions to become trained or certified in the Vivos "system."

132.    Ortho-Tain has suffered damages as a result of defendants' wrongful conduct in that Vivos, Dr. Miraglia and Benco diverted sales, and involuntarily deprived Ortho-Tain of the advertising value of its name and of the goodwill that otherwise would stem from public knowledge of the true source of the satisfactory pediatric oral appliance-products and the favorable results achieved through the implementation of Ortho-Tain's *HealthyStart® System*.

133.    Attendees of the March, 2020 Vivos Wellness Summit featuring Dr. Miraglia were also deprived of knowing the true source or origin of the pediatric oral appliance products used to achieve the favorable results showcased, and were deceived into believing that the favorable results had been achieved by a different source – Vivos.

WHEREFORE, Ortho-Tain, Inc. respectfully prays that the Court:

(a) enter a judgment in its favor and against defendant Vivos on Count VI;

(b) order any compensation, profits or other benefits received by Vivos as a result of its' conduct in violation of the Lanham Act be disgorged and instead awarded to Ortho-Tain as money damages;

(c) award Ortho-Tain its' reasonable attorneys' fees and court costs incurred in prosecuting its legal claims; and

(d) grant Ortho-Tain such other and further relief, including an award of treble damages, as permitted by law.

## COUNT VII
## CIVIL CONSPIRACY BY VIVOS

134.    Plaintiff incorporates the allegations set forth in ¶¶1-15, 20-32, 89-133, for this paragraph as if set forth in full.

135.    For all times relevant there was an agreement between Vivos and Benco whereby each knowingly and voluntarily participated in common scheme to commit an unlawful act or a lawful act in an unlawful manner.

136.    Benco and Vivos, and its Clinical Advisor, Dr. Miraglia, understood the general objectives of the conspiratorial scheme, which were to profit from the sale of Vivos' goods and/or services to attendees of the 2020 Wellness Summit presentation by Dr. Miraglia and Vivos.

137.    Benco assisted with the planning and, with its sponsorship of the 2020 Wellness Summit, encouraged and facilitated Vivos' unlawful false designation of source or origin conduct, in violation of the Lanham Act.

138.    Benco accepted and agreed and acted overtly to further the general objectives of the conspiratorial scheme by publishing one or more announcements on its website, which marketed Vivos' "revolutionary" technology, and through its sponsorship of the Vivos' marketing

26

and sales' courses, including the 2020 Wellness Summit, which were made available to Benco's members at reduced or no charge.

139.    Vivos understood the general objectives of the conspiratorial scheme and, toward that end, took action in furtherance of the conspiracy by re-packaging numerous initial and progress photographs/Power-Point slides of pediatric patients who had been treated with Ortho-Tain's appliances, and then showcasing them as if the results were attributable to Vivos.

140.    Vivos' accepted and agreed and acted overtly to further the general objectives of the conspiratorial scheme by having its "Clinical Advisors," including Dr. Miraglia, give lecturers or presentations to attendees of the Benco sponsored "Vivos" events, including the 2020 Wellness Summit, while using re-packaged case study photographs/power-point slides of Ortho-Tain-appliance-treated pediatric cases in a fashion that had the effect of misleading attendees into incorrectly believing that Vivos and its appliances or system were responsible for the favorable results showcased.

141.    Ortho-Tain has suffered damages as a result of defendants' wrongful conduct in that Vivos, Benco and Dr. Miraglia diverted sales, and involuntarily deprived Ortho-Tain of the advertising value of its name and of the goodwill that otherwise would stem from public knowledge of the true source of the satisfactory pediatric oral appliance-products, Ortho-Tain, and the favorable results achieved through the implementation of its' *HealthyStart® System*.

142.    Attendees of the March, 2020 Vivos Wellness Summit featuring Dr. Miraglia were also deprived of knowing the true source or origin of the pediatric oral appliance products used to achieve the favorable results showcased, and were deceived into believing that the favorable results had been achieved by a different source – Vivos.

WHEREFORE, Ortho-Tain, Inc. respectfully prays that the Court:

(a) enter a judgment in favor of Ortho-Tain and against the Vivos defendants on Count VII;

(b) order Vivos to account for and disgorge the compensation, profits or other benefits received by it as a result of its conspiratorial conduct to violate the Lanham Act and that same be awarded to Ortho-Tain as money damages;

(c) award Ortho-Tain its' reasonable attorneys' fees and court costs incurred in prosecuting its Complaint; and

(d) grant Ortho-Tain such other and further relief as may be permitted by law.

## COUNT VIII
## CIVIL CONSPIRACY BY BENCO

143.    Plaintiff incorporates the allegations set forth in ¶¶1-15, 20-32, 89-142, for this paragraph as if set forth in full.

WHEREFORE, Ortho-Tain, Inc. respectfully prays that the Court:

(a) enter a judgment in favor of Ortho-Tain and against Benco on Count VIII;

(b) order Benco to account for and disgorge the compensation, profits or other benefits received by it as a result of its conspiratorial conduct to violate the Lanham Act and that same be awarded to Ortho-Tain as money damages;

(c) award Ortho-Tain its' reasonable attorneys' fees and court costs incurred in prosecuting its Complaint; and

(d) grant Ortho-Tain such other and further relief as may be permitted by law.

## COUNT IX
## CIVIL CONSPIRACY BY BEN MIRAGLIA

144.    Plaintiff incorporates the allegations set forth in ¶¶1-15, 20-32 and ¶¶89-142 for this paragraph as if set forth in full.

WHEREFORE, Ortho-Tain, Inc. respectfully prays that the Court:

(a) enter a judgment in favor of Ortho-Tain and against Ben Miraglia on Count IX;

(b) order defendant Miraglia to account for and disgorge the compensation, profit or other benefits received by him as a result of his conspiratorial conduct to violate the Lanham Act and that same be awarded to Ortho-Tain as money damages;

(c) award Ortho-Tain its' reasonable attorneys' fees and court costs incurred in prosecuting its Complaint; and

(d) grant Ortho-Tain such other and further relief as may be permitted by law.

## COUNT X
## CIVIL CONSPIRACY KIRK HUNTSMAN

145.    Plaintiff incorporates the allegations set forth in ¶¶1-144 for this paragraph as if set forth in full.

146.    In June of 2014, Kirk Huntsman entered into an agreement with Ortho-Tain, Inc., a true and correct copy of which is attached as Ex.B.

147.    Pursuant to that agreement, Mr. Huntsman received Confidential Information, including technical, professional, scientific, design and commercial data regarding Ortho-Tain's four-decades of product and process development.

148.    Mr. Huntsman agreed not to disclose or otherwise make use the Confidential Information received from Ortho-Tain except for the purpose of assessing the marketing viability for Ortho-Tain Product incorporating the Confidential Information.

149.    In July of 2016 Mr. Huntsman formed "Corrective Biotechnologies, Inc.," in the state of Wyoming, which is now known as Vivos Therapeutics, Inc.. In January of 2017, Mr. Huntsman filed Articles of Amendment with the Colorado Secretary of State to register "Corrective BioTechnologies, Inc." Since that time, both corporations have variously conducted business under the registered name "Vivos Therapeutics, Inc."

150.     As the founder and President of the two Vivos corporate defendants Mr. Huntsman was chiefly responsible for the conduct of Vivos, including its marketing and business agreements with defendants Benco, and with defendant Drs. Miraglia, Musso and Kraft.

151.     Defendant Huntsman has misappropriated and unlawfully disseminated Ortho-Tain's proprietary and Confidential Information.

152.     Defendant Huntsman has altered, or directed others to alter, the Ortho-Tain-treated pediatric patient case photographs/slides so as to bear the label "Vivos" which were then given to Vivos' Clinical Advisors for their use in Vivos' scheme to deceive the attendees of its Vivos' marketing and sales courses and seminars into forming an incorrect belief that the showcased pediatric case results had been achieved through the use of Vivos appliances and/or system services.

153.     Defendant Huntsman has further perpetuated the false designation of source or origin through the creation and dissemination of a marketing 'parent webinar' which has been given to approximately 700 Vivos "providers" to date.

154.     The Vivos parent webinar, like the "Vivos System course" and "2020 Wellness Summit," showcases the favorable results achieved in select pediatric cases which had not been obtained by any Vivos appliance or system, but rather through the proprietary skill and talents of Ortho-Tain, using its appliances and *HealthyStart® System*, and without attribution.

155.     In so doing Huntsman breached the terms of his agreement with Ortho-Tain, including the NDA attached as Ex.B.

156.     For all times relevant there was an agreement between defendants Huntsman, Musso and Miraglia whereby each knowingly and voluntarily participated in common scheme to commit an unlawful act or a lawful act in an unlawful manner.

157.    Defendants Huntsman, Musso and Miraglia understood the general objectives of the conspiratorial scheme, which were to profit from the sale of Vivos' goods and/or services to attendees of the Vivos System courses and seminars as alleged in this Complaint, including the Vivos System courses and the 2020 Wellness Summit.

158.    Huntsman assisted with the planning and preparation of the "Vivos System" courses, and encouraged and facilitated the unlawful false designation of source or origin conduct, in violation of the Lanham Act, through his dissemination of Ortho-Tain's Confidential Information, including information put into Power Point slides re-formatted and used by Vivos.

159.    Huntsman assisted with the planning and preparation of the "Vivos System" by sharing with defendant Miraglia the proprietary features of Ortho-Tain's appliances, Confidential Information on the proprietary materials used in same, material sourcing and information on tool design for manufacturing to exacting specifications needed to successfully guide maxilla and mandibular growth and development.

160.    Huntsman assisted with the planning and preparation and encouraged and facilitated the unlawful false designation of source or origin conduct through his or his company's re-labeling or re-packaging of numerous pediatric case study progress photographs/slides which were then given to Vivos' Clinical Advisors, including Dr. Kraft and/or Dr. Miraglia, for presentation to dental professionals targeted by Vivos for sales of its goods and services.

161.    Huntsman accepted and agreed and acted overtly to further the general objectives of the conspiratorial scheme through his manipulation of photographs/slides, so as to label them "Vivos" when a reasonably prudent person would become confused into believing that the results being presented had been achieved by Vivos, instead of the true source or origin, Ortho-Tain.

162. Huntsman, Musso and Miraglia understood the general objectives of the conspiratorial scheme, accepted and agreed and acted overtly to further the general objectives of the conspiratorial scheme by re-packaging the numerous initial and progress photographs of Ortho-Tain-treated pediatric patients into power-point slides that were then presenting to attendees in a fashion designed and intended to deceive and mislead them, and which did deceive and mislead them, into forming the logical, yet incorrect, belief that a Vivos appliance or system had contributed to the favorable outcomes showcased.

163. Ortho-Tain has suffered damages as a result of defendants' wrongful conduct, including lost revenue, diverted sales, and the involuntarily deprivation of the advertising value of Ortho-Tain's name and of the goodwill that otherwise would stem from public knowledge of the true source of the satisfactory pediatric oral appliance-products, and the favorable results achieved through the implementation of its' *HealthyStart® System*.

164. Through Huntsman's actions, attendees of the Vivos System courses and seminars throughout the country, including on 2/7/20 in St. Louis, Missouri, and those on-line attendees of the March 26, 2020 Vivos Wellness Summit featuring Dr. Miraglia, were deprived of knowing the true source or origin of the pediatric oral appliance products used to achieve the favorable results showcased, Ortho-Tain, and were misled and deceived into incorrectly believing that the favorable results showcased had been achieved by a different source – Vivos.

165. As a result of defendant Huntsman and his Vivos' companies' actions, Dr. Brian Kraft was induced and caused to wrongfully breach his Non-Compete Agreement, Ex.A. with Ortho-Tain.

WHEREFORE, Ortho-Tain, Inc. respectfully prays that the Court:

(a) enter a judgment in favor of Ortho-Tain and against defendant Huntsman on Count X;

(b) order Mr. Huntsman to account for and disgorge the compensation, profits or other benefit received by him as a result of his conspiratorial conduct to violate the Lanham Act and that same be awarded to Ortho-Tain as money damages;

(c) award Ortho-Tain its' reasonable attorneys' fees and court costs incurred in prosecuting its Complaint; and

(d) grant Ortho-Tain such other and further relief as may be permitted by law.

## COUNT XI
## BREACH OF NON-DISCLOSURE AGREEMENT

166. Plaintiff incorporates the allegations set forth in ¶¶1-165 for this paragraph as if set forth in full.

167. Huntsman's conduct, as alleged herein, was in breach of the Non-Disclosure Agreement signed by him in June of 2014. Ex.B.

168. Ortho-Tain has suffered damages as a result of defendant's wrongful conduct, including lost revenue, diverted sales, and the involuntarily deprivation of the advertising value of Ortho-Tain's name and of the goodwill that otherwise would stem from public knowledge of the true source of the satisfactory pediatric oral appliance-products, and the favorable results achieved through the implementation of its' *HealthyStart® System*.

WHEREFORE, Ortho-Tain, Inc. respectfully prays that the Court:

(a) enter a judgment in favor of Ortho-Tain and against Mr. Huntsman on Count XI;

(b) order Huntsman to account for and disgorge all compensation, profit or other benefit received by him as a result of his conspiratorial conduct to violate the Lanham Act and that same be awarded to Ortho-Tain as money damages;

(c) award Ortho-Tain its' reasonable attorneys' fees and court costs incurred in prosecuting its Complaint; and

(d) grant Ortho-Tain such other and further relief as may be permitted by law.

Respectfully submitted,
Neff Law Group PC

/s/ Nathan I. Neff
Attorney for Ortho-Tain, Inc.

Nathan I. Neff
Neff Law Group PC
414 N. Orleans, Suite 210
Chicago, Illinois 60654
(312) 667-4484
nathan@nefflawgroup.com