IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ORTHO-TAIN, INC., | ) | |
| Plaintiff, | ) | Case No. 1:20-cv-4301 |
| v. | ) | |
| | ) | Judge John Robert Blakey |
| COLORADO VIVOS THERAPEUTICS, INC., | ) | |
| VIVOS THERAPEUTICS, INC., | ) | |
| BENCO DENTAL SUPPLY CO., | ) | |
| BRIAN KRAFT, BEN MIRAGLIA, | ) | |
| MARK MUSSO and KIRK HUNTSMAN, | ) | |
| Defendants. | ) | |

**DEFENDANT BENCO DENTAL SUPPLY'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

**INTRODUCTION**

There is no better argument in favor of Benco's Motion to Dismiss than the opposition brief submitted by Ortho-Tain. First, Ortho-Tain has effectively admitted that it has not – and cannot – plead that Benco was a knowing participant in a conspiracy to violate the Lanham Act, under any pleading standard. Just as egregiously, Ortho-Tain misunderstands controlling Supreme Court precedent, cites inapposite cases in support of the wrong argument, improperly offers new facts and new theories, and then shamelessly pretends that the false designation claim it pled under Section 43(a)(1)(A) was secretly a false advertising claim under Section 43(a)(1)(B) all along. In short, rather than attempting to amend its Complaint – as it was free to do under the simple framework provided by this Court – Ortho-Tain has instead sought to inappropriately use its opposition brief to wildly fantasize that precedent, statutes, and the words of its own Complaint say entirely different things. Accordingly, Ortho-Tain's claims against Benco must be dismissed, with prejudice.

**A. Ortho-Tain Failed to Plead Sufficient its Conspiracy Claim with Sufficient Detail**

The simple fact is that Ortho-Tain has not adequately pled its civil conspiracy claims against Benco, whether considered under traditional standards of Rule 8 or the particularity standard required

1

under Rule 9.[1] Just as it did in its initial pleading, Ortho-Tain's opposition brief merely strings together baseless accusations that do not amount to any sort of cognizable claim against Benco. It is simply not apparent what wrongful act, exactly, Benco knowingly "conspired" to realize, any other details about Benco's participation in this purported conspiracy, or even what it agreed to do in the abstract.

Ortho-Tain once again alleges that "Vivos and Benco entered into a contract in which Benco agreed, in exchange for consideration, to advertise, promote and market Vivos . . . ." Pl.'s Resp. 7. The "general objectives of the conspiratorial scheme" were to "to get dental professionals to buy Vivos products/services/get paid." *Id.* This does not describe a conspiracy, but rather the definition of a legitimate business relationship. To plead a conspiracy, Ortho-Tain must allege that Benco entered into "'(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff.'" *Turner v. Hirschbach Motor Lines*, 854 F.3d 926, 930 (7th Cir. 2017) (quoting *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007)). None of this is unlawful, and no tortious act is alleged – let alone that Benco *knowingly agreed* to work with another party *to do something wrong.*

Perhaps recognizing that its Complaint failed on its face to allege Benco's knowing participation in anything other than an ordinary business transaction, let alone a conspiracy to engage in tortious activity, Plaintiff now abruptly changes course in its opposition brief to argue that contrary to the exact words used in its Complaint, *this is actually a false advertising case under Section 43(a)(1)(B).*

---

[1] Ortho-Tain does not challenge whether Rule 9 is properly applied as the pleading standard; for the reasons described in Benco's Memorandum in Support the requirements of Rule 9 should apply. Ironically, Ortho-Tain's new claim that it has "actually" alleged false advertising under Section 43(a)(1)(B) would make the argument for a heightened pleading standard under Rule 9 even stronger – and even more clearly unmet. *Vertical Web Media, L.L.C. v. Etailinsights, Inc.*, No. 14 C 3320, 2014 WL 2868789, at *3 (N.D. Ill. June 24, 2014) (concluding that Rule 9(b) applies to claims alleging false advertising under the Lanham Act); *Fisher & Paykel Appliances, Ltd. v. LG Elecs., Inc.*, No. 03 C 50146, 2003 WL 21910622, at *1 (N.D. Ill. Aug. 7, 2003) (heightened pleading requirements apply to claim for false advertising under the Lanham Act).

Specifically, Ortho-Tain newly identifies the following alleged misrepresentations as having been *made by Benco*:

- "Benco represented to its members and customers across the country that Vivos was possessed with '*revolutionary*' technology and that Vivos represented a '*first ever hope*' for helping people with sleep disordered breathing issues, including [obstructive sleep apnea]"
- "Benco marketing was shamefully misleading to any dental provider seeking to be able to '*reshape*' the airways of pediatric patients and provide relief to their sleep disordered breathing issues, including those suffering from obstructive sleep apnea."
- "Benco knew, or should have known with a modicum of due diligence, that (as plaintiff has alleged) Vivos holds no patents for any pediatric oral appliance."
- "Benco knew or should have known that the Vivos pediatric "Guides" are neither 'approved' (Class III) nor 'cleared' (Class II) by the FDA for the treatment of sleep disordered breathing, snoring or OSA in any form, mild, moderate or severe."

Pl.'s Resp. 7. These allegations are irrelevant for several reasons. First, as pled in the Complaint, the Lanham Act violation underlying Plaintiff's conspiracy claim is expressly false designation of origin. Compl. ¶ 49. If Plaintiff is now alleging that Benco or Vivos made false or misleading statements in their advertisements, that would be a false advertising claim. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 572 U.S. 118, 122 (2014) ("Section 1125(a) creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)"). Second, a properly pled conspiracy claim cannot depend on what a defendant "should have known." Conspiracy requires "an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means." *Turner*, 854 F.3d at 930. Third, there is no allegation that any of these things – even if true, and even if actionable – were known to be false by Benco, part of any illicit agreement with Vivos, or that they specifically resulted in any injury of any kind. Under Rule 9, this allegation is sparse to the point of being incomprehensible.[2]

---

[2] Critically, the only statements which are even characterized as having been made with Benco's knowledge of their purported falsity are not actionable statements but puffery. *Martin v. Wendy's Int'l, Inc.*, 183 F. Supp. 3d 925, 934 (N.D. Ill. 2016).

3

Finally, even if it were permissible to radically re-characterize the claims made by Ortho-Tain in its complaint as false advertising claims, which cannot be done under existing precedent, they are not properly pled. In order to prove an allegation of false advertising, a plaintiff must establish that a defendant: "(1) made a false or misleading statement; (2) that actually deceives or is likely to deceive a substantial segment of the advertisement's audience; (3) on a subject material to the decision to purchase the goods; (4) touting goods entering interstate commerce; and (5) that results in actual or probable injury to [plaintiff]." *Champion Labs., Inc. v. Cent. Illinois Mfg. Co.*, 157 F. Supp. 3d 759, 762 (N.D. Ill. 2016) (Blakey, DJ) (citing *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 971 (7th Cir. 1999)). Quite simply, Ortho-Tain has not adequately pled a claim for false advertising. In its Complaint, for example, Ortho-Tain does not allege that the alleged mis-labeling of certain case study results was material to consumers' purchasing decisions – "materiality" does not even appear in the text of the Complaint – or at a more basic level that the alleged conduct at issue was the proximate cause of an injury to Ortho-Tain, as required by the Supreme Court in *Lexmark* (as would be necessary to establish statutory standing). *See Lexmark*, 572 U.S. at 133-34. Baldly alleging these or other elements in an opposition brief is not enough. Ortho-Tain has not adequately pled the elements of its newly invented false advertising claim under Rule 8, much less the more rigorous Rule 9 standard.

Yet beyond the substance, this attempt to back-door a new complaint through briefing also fails as a matter of procedure. Specifically, Ortho-Tain improperly raises new claims and asserts new facts in its opposition. It now asserts that Vivos (and, indeed, apparently Benco itself) violated the Lanham Act through the dissemination of website advertising and press releases. Pl.'s Resp. 7. However, Ortho-Tain's original Complaint only asserted that Vivos violated the Lanham Act during two marketing events sponsored by Benco. Compl. ¶ 48-58. Moreover, Benco's role the conspiracy itself appears to have changed, even as it remains entirely vague and opaque. "It is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss . . . ."

4

*Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989). Thus, it would be improper for the court to consider these new allegations, even if they were adequate.

Worse, Ortho-Tain does not merely allege new "wrongful acts, but also references additional facts not mentioned in its complaint as support for its claim. Here, Ortho-Tain – *in its opposition to a motion to dismiss* – makes new allegations regarding how Vivos's products are registered with the FDA, and additional claims about how Vivos has unfairly benefited from its misrepresentations. Pl.'s Resp. 7, 10. It is improper for the Court to consider this new information as it is outside the pleadings, and indeed is irrelevant to the claim being made. When considering a motion to dismiss, a court must limit its considerations to the factual allegations set forth in the four corners of the complaint. *Gardunio v. Town of Cicero*, 674 F. Supp. 2d 976, 985 (N.D. Ill. 2009) (citing *Rosenblum v. Travelbyus.com*, 299 F.3d 657, 661 (7th Cir. 2002)). As a general rule, the court may not consider material outside the pleadings without converting the motion to dismiss into one for summary judgment. Fed. R. Civ. P. 12(d). Thus, considering only the allegations relevant Plaintiff's claims that are properly before the Court, Ortho-Tain has still not pled its conspiracy claims against Benco.

### B. The Holding of *Dastar* is Fatal to Ortho-Tain's Lanham Act Claim

Even if it had been properly pled, Ortho-Tain would still be unable to sustain its conspiracy claim against Benco because the underlying Lanham Act claim is barred – and Ortho-Tain's opposition brief itself demonstrates the logical impossibility of its claim.

Despite protestations to the contrary in its opposition, there is no question that the original complaint in this action alleged a false designation of origin under § 43(a)(1)(A). *The Complaint even attempts (erroneously) to quote the specific provision at issue* each time it alleges violations of the Lanham Act:

> 49. The Lanham Act, at 15 U.S.C. §1125(a), provides in pertinent part that *"Any person who shall affix, apply, or annex, or use in connection with any goods or services a false designation of origin, or any false designation or representation and shall cause such goods or*

5

> *services to enter into commerce shall be liable to a civil action by any person who believes that he is or is likely to be damaged by the use of any such false designation or representation.".*
>
> 90. The Lanham Act, at 15 U.S.C. §1125(a), provides in pertinent part that *"Any person who shall affix, apply, or annex, or use in connection with any goods or services a false designation of origin, or any false designation or representation and shall cause such goods or services to enter into commerce shall be liable to a civil action by any person who believes that he is or is likely to be damaged by the use of any such false designation or representation.".*

Compl. ¶¶ 49, 90.³ Considered as such, Ortho-Tain's theory of liability plainly contradicts the Supreme Court's unanimous holding of *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003). To plead a claim of false designation of origin, Ortho-Tain must allege consumer confusion as to the source of "tangible goods that are offered for sale," not confusion regarding "the author of any idea, concept, or communication embodied in those goods." *Id.* at 37. As Ortho-Tain admits in its opposition, the products at issue are Ortho-Tain's oral appliances. But the gravamen of Ortho-Tain's complaint is that Vivos mislabeled photographs and marketing materials that were rightfully attributable to Ortho-Tain's products. This violated the Lanham Act, according to Ortho-Tain, because such marketing materials "speak to the inherent qualities (safety, reliability, effectiveness) of [Ortho-Tain]'s products." Pl.'s Resp. 13. This is precisely the type of confusion that the Court rejected as a basis for liability under § 43(a)(1)(A) in *Dastar* and its progeny. *See Phoenix Entm't Partners v. Rumsey*, 829 F.3d 817, 821 (7th Cir. 2016) (Lanham Act claim concerning unauthorized digital copies of karaoke files barred by *Dastar* because claim did not involve passing off of tangible goods sold in the marketplace); *Alan Ross Mach. Corp. v. Machinio Corp.*, No. 17-cv-3569, 2018 WL 6018603, at *4 (N.D.

---

³ Plaintiff is actually erroneously citing the pre-1988 version of the Lanham Act. 15 U.S.C. § 1125 (1988). The current act, in relevant part, imposes liability on "[a]ny person who, on or in connection with any goods or services . . . uses in commerce . . . any false designation of origin, . . . which—(A) is likely to cause confusion, or to cause mistake, or to deceive ... as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . ." 15 U.S.C. § 1125(a)(1)(A) (2012). This is notable as, for the reasons described in FN 5, *infra*, the pre-1988 version of the Lanham Act did not distinguish between claims for false advertising and false designation of origin, whereas the current one does.

Ill. Nov. 16, 2018) (false designation claim relating to copied photographs and descriptions barred by *Dastar* because defendant created the final product even if it copied content from the plaintiff).

### C. Ortho-Tain Has Not and Cannot Cite Any Controlling in Support of its Theory of Lanham Act Liability

Faced with this insurmountable hurdle to its § 43(a)(1)(A) claim, Ortho-Tain's opposition instead relies on authority that was decided outside of this Circuit, or pre-*Dastar,* or under a completely different (inapplicable) section of the Lanham Act. Throughout its brief, Ortho-Tain conflates elements and considerations relevant to false advertising claims with those relevant to the false designation of origin claim it pled. "Section 1125(a) creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)." *Lexmark*, 572 U.S at 122. Claims under section 43(a)(1)(A) and 43(a)(1)(B) have separate and distinct elements.[4]

Despite these significant differences, Ortho-Tain repeatedly references elements of false advertising claims in its opposition brief in support of its false designation of origin claim. Specifically, Ortho-Tain contends (in its brief) that it was "literally false" of Vivos to state or imply that it was responsible for the results shown in Ortho-Tain clinical studies and photographs and that this falsity was *material*. Pl.'s Resp. 9, 13. Literal falsity and materiality are elements of a false advertising claim. *See, e.g.*, *Eli Lilly*, 893 F.3d at 382. Notably, as an important aside, Ortho-Tain does not cite to its Complaint for the place where it pled materiality, let alone with particularity, because it cannot. Ortho-Tain is simply attempting to conjure an imaginary amended complaint rather than drafting one.

---

[4] *Compare Monotype Corp. v. Simon & Schuster Inc.*, No. 99 C 4128, 2000 WL 1852907, at *3 (N.D. Ill. Sept. 8, 2000)("To establish a prima facie false designation of origin claim under § 43(a)(1)(A), a plaintiff must establish that: (1) the defendant used a false designation of origin or false description or representation in connection with goods or services; (2) the defendant caused such goods or services to enter into interstate commerce; and (3) the plaintiff believes that he or she is likely to be damaged as a result thereof.") (citations omitted), *with Eli Lilly & Co. v. Arla Foods, Inc.*, 893 F.3d 375, 381-82 (7th Cir. 2018). ("To prevail on a deceptive-advertising claim under the Lanham Act, a plaintiff must establish that (1) the defendant made a material false statement of fact in a commercial advertisement; (2) the false statement actually deceived or had the tendency to deceive a substantial segment of its audience; and (3) the plaintiff has been or is likely to be injured as a result of the false statement.").

Ortho-Tain also offers cases decided under § 1125(a)(1)(B) as examples of the "near countless authorities" that support its theory of liability for false designation of origin. Pl.'s Resp. 13; *Nat'l Grange of the Order of Patrons of Husbandry v. California Guild*, 334 F. Supp. 3d 1057, 1067 (E.D. Cal. 2018) (determining liability under under § 1125(a)(1)(B)); *ITEX Corp. v. Glob. Links Corp.*, 90 F. Supp. 3d 1158, (D. Nev. 2015) (same); *Veve v. Corporan*, 977 F. Supp. 2d 93 (D.P.R. 2013) (same); *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384 (D.N.J. 2009) (same); *NewMarkets Partners LLC v. Oppenheim*, 638 F. Supp. 2d 394 (S.D.N.Y. 2009) (same).

Ortho-Tain's citations to these inapposite cases are thus entirely irrelevant. Ortho-Tain asserted a claim for false designation of origin under § 43(a)(1)(A) of the Lanham Act. Ortho-Tain cannot use its response to improperly amend its Complaint to assert a false advertising claim. *Thomason*, 888 F.2d at 1205; *Wooley v. Jackson Hewitt, Inc.*, 540 F. Supp. 2d 964, 972 (N.D. Ill. 2008) ("Plaintiff cannot amend his complaint by raising new claims in response to the motion to dismiss.") *Berg v. BCS Fin. Corp.*, 372 F. Supp. 2d 1080, 1091 n.8 (N.D. Ill. 2005) (declining to consider new claims contained in response to motion to dismiss). Moreover, and just as relevant, is the fact that Ortho-Tain cannot borrow elements relevant to false advertising claims to synthetically supplement its deficient false designation of origin claim.

Ortho-Tain also inexplicably relies on a variety of cases decided pre-*Dastar* to support its contention that *Dastar* does not bar its claim. Pl.'s Resp. 3-4; *Forschner Grp., Inc. v. Arrow Trading Co. Inc.*, 30 F.3d 348, 350 (2d Cir. 1994); *Savin Corp. v. Nat'l Toner Warehouse, Inc.*, 528 F. Supp. 636 (N.D. Ga. 1981); *Bangor Punta Operations, Inc. v. Universal Marine Co.*, 543 F.2d 1107 (5th Cir. 1976); *Skil Corp. v. Rockwell Int'l Corp.*, 375 F. Supp. 777, 781 (N.D. Ill. 1974). These citations are unavailing, not only because they were decided before the Court limited scope of actionable confusions under § 43(a)(1)(A)

in *Dastar*, but also because most of them were decided under a prior version of § 43(a) – ironically, the statute erroneously cited by Ortho-Tain in its Complaint.[5]

Even where Ortho-Tain manages to cite authority based on the correct provision of the Lanham Act, and where it is not outdated, it still misses the mark. Ortho-Tain cites *AECOM Energy & Construction, Inc. v. Ripley*, 348 F. Supp. 3d 1038 (C.D. Cal. 2018) and *National Grange of the Order of Patrons of Husbandry v. California State Grange*, No. 2:16-201 WBS DB, 2016 WL 6696061 (E.D. Cal. Nov. 15, 2016), as examples of cases where a court found liability under § 43(a)(1)(A) because the defendant passed off plaintiff's accomplishments as its own. But in both cases, the defendant was using identical or confusingly similar trademarks on substantially similar websites in a wholesale attempt to pass themselves off as plaintiff. *AECOM*, 348 F. Supp. 3d at 1050-51; *Nat'l Grange*, 2016 WL 6696061 at *6. They are cases, in other words, of traditional passing-off. Thus, these cases are distinguishable because Ortho-Tain has not alleged that Vivos attempted to dupe consumers into believing it was Ortho-Tain. Instead, Ortho-Tain has alleged that Vivos is taking credit for the accomplishments of Ortho-Tain. That is not false-designation or origin, and there is no way to properly plead it as such.

## CONCLUSION

For the foregoing reasons, Benco respectfully requests that the Court dismiss each of the causes of action brought against Benco by Ortho-Tain in the Complaint, with prejudice.

---

[5] The Trademark Law Revision Act of 1988 amended the Lanham Act and took effect in 1989. Pub. L. No. 100-667, 102 Stat. 3935 (codified as amended at 15 U.S.C. §§ 1051–1127). This is significant because prior to the 1988 revisions, § 43(a) was a single prohibition of unfair competition that courts interpreted to cover both false designations of origin and false advertising. *See* J. Thomas McCarthy, *Lanham Act § 43(a): The Sleeping Giant Is Now Wide Awake*, L. & CONTEMP. PROBS. 45, 52-53 (1996) (describing the history and evolution of § 43(a)). In 1988, Congress amended the Lanham Act to create two distinct theories of liability and divide § 43(a) into subsection (1)(A), which prohibited false designation of origin, and subsection (1)(B), which prohibited false advertising. *See id.* Thus, Ortho-Tain's reliance on these cases to support its section 43(a)(1)(A) claim is further misplaced because many of these cases would have been analyzed under the false advertising prong of the modern Lanham Act.

|  |  |
|---|---|
| | Respectfully Submitted, |
| Dated: November 6, 2020 | BENCO DENTAL SUPPLY CO. |
| | */s/ Darren S. Cahr* |
| | Darren S. Cahr |
| | Caitlin P. Canahai |
| | Natalie K. DeLave |
| | **Faegre Drinker Biddle & Reath LLP** |
| | 191 N. Wacker Dr., Ste. 3700 |
| | Chicago, IL 60606-1698 |
| | (312) 569-1000 |
| | Darren.Cahr@faegredrinker.com |
| | Caitlin.Canahai@faegredrinker.com |
| | Natalie.DeLave@faegredrinker.com |
| | *Counsel for Benco Dental Supply Co.* |

### CERTIFICATE OF SERVICE

I certify that on November 6, 2020, a true and correct copy of the foregoing document was served on all counsel of record via the Court's CM/ECF system.

*/s/ Darren S. Cahr*
Darren S. Cahr