IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Ortho-Tain, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Colorado Vivos Therapeutics, Inc., Vivos Therapeutics, Inc., Kirk Huntsman, Ben Miraglia, Brian Kraft, Mark Musso, and Benco Dental Supply Co., <br><br> Defendants. | Case No. 20 C 4301 <br><br> Hon. LaShonda A. Hunt |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ortho-Tain, Inc. sued Defendants Colorado Vivos Therapeutics, Inc., Vivos Therapeutics, Inc.,[1] Dr. Ben Miraglia, Dr. Mark Musso, Kirk Huntsman, Dr. Brian Kraft, and Benco Dental Supply Co., for violations of the Lanham Act, civil conspiracy, and breach of contract. Ortho-Tain alleges that Defendants conspired to sell orthodontic appliance products by falsely taking credit for favorable results achieved by Ortho-Tain's products. In connection with that conspiracy, Ortho-Tain claims that Dr. Kraft breached a non-compete clause and Huntsman breached a non-disclosure agreement. The Vivos Defendants and Benco each seek dismissal of Ortho-Tain's complaint under Rule 12(b)(6). In addition, Dr. Musso seeks dismissal for lack of jurisdiction and improper venue under Rules 12(b)(2) and (b)(3), respectively. For the reasons discussed below, Benco's motion [78] is granted, and the Vivos Defendants' motion [79] is granted in part and denied in part.

---

[1] The Complaint uses the name "Vivos" to collectively refer to Defendants Colorado Vivos Therapeutics, Inc. and Vivos Therapeutics, Inc. (Dkt. 1 at ¶ 9). To avoid confusion, the Court will do the same. Furthermore, the Vivos entities, together with Defendants Miraglia, Musso and Huntsman, are collectively referred to as the "Vivos Defendants." (Vivos Mot. at 1, Dkt. 79).

1

## BACKGROUND

Ortho-Tain and Vivos are competitors in the business of manufacturing and selling orthodontic appliance products used to treat various conditions such as sleep disordered breathing. (Compl. ¶¶ 2, 6-8, 10, Dkt. 1). Huntsman is Vivos' founder and CEO. (*Id.* ¶¶ 9, 93). Benco is a dental supply and equipment distributor and dental consulting and equipment services provider. (*Id.* ¶¶ 14-15). Drs. Miraglia, Kraft, and Musso are dentists. (*Id.* ¶¶ 11-13).

In 2013, several years before Huntsman formed Vivos, he signed a non-disclosure agreement ("NDA") with Ortho-Tain to explore the marketing viability of certain new orthodontic appliance products.[2] (*Id.* ¶¶ 7-8, 20-24 & Ex. B (NDA), Dkt. 1-2). The NDA provided that Ortho-Tain would disclose confidential and propriety information, including plans for the marketing, sale and distribution of orthodontic appliances, research data, product exemplars, and patient case records, and that the recipients of the confidential and proprietary information were prohibited from disclosing such information for at most three years following its initial disclosure. (Compl. ¶¶ 20-24 & NDA art. 3).

As part of its business, Ortho-Tain hires dentists to give presentations and lectures about its products to other medical professionals. For example, in October 2014, Ortho-Tain engaged Dr. Miraglia to be a paid presenter for a course in which he showcased case studies of several pediatric patients who had achieved favorable results using Ortho-Tain's orthodontic appliances.

---

[2] There are a number of factual discrepancies between the parties' characterizations of the NDA and the NDA itself. First, Ortho-Tain alleges that the parties entered into the NDA in June 2014, but the agreement itself states that it is entered into as of October 23, 2013. (*Compare* Compl. ¶ 20 *with* Compl., Ex. B at 1). Second, Ortho-Tain and Huntsman dispute whether Huntsman is bound by the NDA. The NDA lists the parties as "Leslie Stevens, Ortho-Tain, Inc. a Puerto Rico Corporation" and "Xenith Practices, LLC, a Texas Limited Liability Company, R. Kirk Huntsman, Doug Woodward, its principals, and employees." (NDA at 1). The NDA then refers to "Ortho-Tain", "Recipient", and "Recipients", but the latter two terms were never defined. (*See, e.g., id.*, art. 2, 3). The signature block lists "Leslie Stevens ORTHO-TAIN, INC.", "R. Kirk Huntsman Xenith Practices, LLC", and "Doug Woodard [sic] Xenith Practices, LLC" as signatories and includes signatures on the "By" line for all three. (*Id.* at 3). Under the signatures, the spaces for "Name" and "Title" were left blank. (*Id.*)

2

(Compl. ¶¶ 102, 108, 117). Several years later, in April 2018, Ortho-Tain entered into a "Speaking Agreement" with Dr. Kraft. (*Id.* ¶ 18-19 & Ex. A (Speaking Agreement), Dkt. 1-1). The Speaking Agreement provided that Dr. Kraft would give presentations about Ortho-Tain's products to other medical professionals and would not compete with Ortho-Tain for at least two years after termination of the contract. (Compl. ¶ 19 & Speaking Agreement §§ 4, 9). Dr. Kraft eventually terminated the Speaking Agreement on April 10, 2020. (Compl. ¶ 79). Although it is unclear if Ortho-Tain's relationship with Dr. Musso was the same as with Drs. Miraglia and Kraft, it appears that Dr. Musso may have presented for Ortho-Tain because he had information on several case studies of pediatric patients who had achieved favorable results using its products. (*Id.* ¶¶ 71-75). Through Huntsman's work with Ortho-Tain, he was connected with Drs. Miraglia, Kraft, and Musso. (*Id.* ¶ 25).

Huntsman formed Vivos in 2016 and 2017. (*Id.* ¶¶ 7-10). Like Ortho-Tain, Vivos sells orthodontic appliances that treat patients with conditions such as sleep disordered breathing. (*Id.*) As part of its business, Vivos put on a series of events in early 2020 (the "Vivos System course") featuring dentists referred to as "Clinical Advisors" who spoke about treatments for sleep apnea using Vivos' products. (*Id.* ¶ 26-34). Benco sponsored the events, Dr. Kraft spoke during an event in St. Louis, Missouri, on February 7, 2020, and Dr. Miraglia spoke during an online event on March 26, 2020 (the "2020 Wellness Summit"). (*Id.* ¶¶ 26-34, 35-36, 91). During these events, Drs. Kraft and Miraglia discussed and presented slides containing information about pediatric case studies—the same exact case studies that had previously been showcased in connection with Ortho-Tain's presentations and lectures about patients who had achieved favorable results using Ortho-Tain's orthodontic appliances. (*Id.* ¶¶ 37-44, 95-125). The slides containing the information about the case studies also displayed the name "Vivos" and the presenters attributed the favorable

3

results to Vivos' products, not Ortho-Tain. (*Id.* ¶¶ 38-43, 64-65, 71-74, 95-101, 139-40, 152, 158-162). Similarly, Vivos created and disseminated a "parent webinar" that showcased the pediatric case studies as examples of favorable results obtained by Vivos' products without giving credit to Ortho-Tain. (*Id.* ¶¶ 153-54). Although it is unclear whether Dr. Musso ever presented for Vivos, he provided Vivos with information on the pediatric case studies. (*Id.* ¶¶ 70-71).

According to Ortho-Tain, Defendants all conspired to use the case studies of pediatric patients who achieved favorable results by using Ortho-Tain's products and to give Vivos credit for the results. (*Id.* ¶¶ 59-75, 134-65). Vivos, Benco, and Huntsman benefited by selling products, and Drs. Miraglia, Kraft, and Musso benefited by receiving compensation for being Clinical Advisors. (*Id.*)

Based on these events, Ortho-Tain filed an eleven-count complaint on July 22, 2020, asserting claims under section 1125(a) of the Lanham Act (Counts I and VI), for civil conspiracy (II-IV and VII-X), and for breach of contract (Counts V and XI). Only Dr. Kraft answered. (Kraft Am. Ans., Dkt. 22). All other defendants filed motions to dismiss, (Mots., Dkts. 8, 13). The district judge previously assigned to this case[3] stayed the matter pending resolution of a related lawsuit filed in Colorado by Vivos against Ortho-Tain approximately two months earlier.[4] (Order dated May 14, 2021, Dkt. 37). As a result, the original motions to dismiss were denied without prejudice. (*Id.*) Approximately two years later, the stay was lifted when the Colorado District Court Action

---

[3] This case was reassigned to the calendar of Judge LaShonda A. Hunt on June 2, 2023. (Reassignment Order, Dkt. 69).

[4] On June 5, 2020, Vivos sued Ortho-Tain. *See Vivos Therapeutics Inc. v. Ortho-Tain, Inc.*, No. 20 C 1634 (D. Colo.) (the "Colorado District Court Action"). The operative complaint includes claims for false advertising, consumer protection violations, libel and slander, contractual interference, and a declaratory judgment that Vivos did not violate the Lanham Act. *Id.*, Dkt. 40. Orders denying motions to dismiss in that action have been appealed twice, *see Vivos Therapeutics Inc. v. Ortho-Tain, Inc.*, No. 21-1309 & No. 24-1061 (10th Cir.), with the second appeal still pending.

appeared to be closed. (Minute Order dated March 2, 2023, Dkt. 57). Defendants then renewed their dismissal motions, (Benco Mot., Dkt. 78; Vivos Mot., Dkt. 79), which are now fully briefed and ready for ruling.

## **LEGAL STANDARD**

Rule 12(b)(6) permits a party to move for dismissal based on a pleading's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In determining whether a complaint states a claim under Rule 12(b)(6), courts must accept all non-conclusory factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In addition, the Court must construe the complaint in the light most favorable to the plaintiff and draw all reasonable inferences in the plaintiff's favor. *Levy v. W. Coast Life Ins. Co.*, 44 F.4th 621, 626 (7th Cir. 2022). While ruling on a motion to dismiss for failure to state a claim, a court may generally consider only the plaintiff's complaint, exhibits to the complaint, matters central to the plaintiff's claim and incorporated into the complaint by reference, and items subject to judicial notice. *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

Applying these principles, a complaint will survive a motion to dismiss if it "states a plausible claim for relief." *Ashcroft*, 556 U.S. at 679 (2009) (citing *Twombly*, 550 U.S. at 556). To state a plausible claim for relief, a complaint must "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9. Generally, this means that the plaintiff must spell out the "who, what, when, where, and how" of the alleged fraud.

*Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016). The movant has the ultimate burden to show that dismissal is warranted. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

## DISCUSSION

Benco and the Vivos Defendants generally contend that Ortho-Tain's Lanham Act claims are precluded by Supreme Court precedent and the civil conspiracy claims are not alleged with the requisite degree of particularity. Dr. Musso specifically contests both personal jurisdiction and venue, and Huntsman specifically disputes whether he was bound by the NDA and any alleged disclosures were made within the non-disclosure period. Separately, Benco argues that the allegations of its involvement in the conspiracy are insufficient to state a claim, The Court will address each issue in turn.

**I.     Lanham Act Claims**

In Counts I and VI of the Complaint, Ortho-Tain asserts claims against Vivos under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), based on the use of Ortho-Tain's case studies in the Vivos System course and 2020 Wellness Summit, respectively. The relevant section of the Lanham Act, provides as follows:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> >
> > (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

6

>shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125. "Section 1125(a) thus creates two distinct bases of liability: false association[/designation of origin], § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014); *see also Kennedy v. Nat'l Juvenile Det. Ass'n*, 187 F.3d 690, 695-96 (7th Cir. 1999) (reciting elements for false association/designation of origin); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999) (reciting elements for false advertising). Lanham Act claims are subject to the heightened pleadings standard of Rule 9(b) if they are based on allegations of fraud. *See VitalGo, Inc. v. Kreg Therapeutics, Inc.,* Case No. 16 C 5577, 2017 WL 6569633, at *6-10 (N.D. Ill. Dec. 21, 2017).

The Vivos Defendants first argue that Ortho-Tain has failed to state a claim under § 1125(a)(1)(A) because it has not alleged that Vivos either sold Vivos' products under Ortho-Tain's name (passing off) or sold Ortho-Tain's products under Vivos' name (reverse passing off). Rather, the Vivos Defendants assert that Ortho-Tain's claim relates to the intangible idea that Vivos' products cause certain treatment results, which is inactionable under Supreme Court precedent.

To state a claim for false association/designation of origin of goods under § 1125(a)(1)(A), the goods that are the subject of the claim must be tangible. *Dastar Corp. v. Twentieth Century Fox Film Corp.,* 539 U.S. 23, 37 (2003). In *Dastar*, the defendant obtained a copy of a television series previously made by the plaintiff; condensed, modified, and retitled the series; and then marketed the revised series as its own without giving credit to the plaintiff. *Id.* at 25-27. There, the Supreme Court held that the "the phrase 'origin of goods' is in [its] view incapable of connoting the person or entity that originated the ideas or communications that 'goods' embody or contain." *Id.* at 32. Summarizing its holding, *Dastar* states that "reading the phrase 'origin of goods' in the

7

Lanham Act in accordance with the Act's common-law foundations (which were *not* designed to protect originality or creativity), and in light of the copyright and patent laws (which *were*), we conclude that the phrase refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Id.* at 37 (emphasis in original).

In the Complaint, Ortho-Tain appears to attempt to assert a claim based on a form of reverse passing off. Its theory is that Vivos used case studies about favorable results achieved by Ortho-Tain's products to sell Vivos' products. The goods at issue in this case are orthodontic appliances, but Ortho-Tain does not allege that Vivos is either selling Ortho-Tain's appliances as its own or selling its appliances under Ortho-Tain's name. Rather, Ortho-Tain's claim relates to what is essentially advertising material—the case studies about favorable results achieved by Ortho-Tain's appliances—and the use of that material to falsely communicate that such results were achieved by Vivos' appliances. Such a claim fails under *Dastar* because the connection between the favorable results and appliances is an intangible idea or concept. Because the focus of Ortho-Tain's claim is the idea or concept communicated by the advertising material, not the source of the actual orthodontic appliances, it cannot state a claim under § 1125(a)(1)(A) based on the facts alleged. *See Phoenix Ent. Partners v. Rumsey*, 829 F.3d 817, 827 (7th Cir. 2016) ("what *Dastar* makes clear is that a consumer's confusion must be confusion as to the source of the tangible good sold in the marketplace.").

But the analysis does not end there—the Court must also consider whether Ortho-Tain has stated a claim for false advertising under 15 U.S.C. § 1125(a)(1)(B).[5] To ultimately prevail on a

---

[5] As the Vivos Defendants note, Ortho-Tain's Complaint quotes an outdated version of the statute that did not distinguish between false association/designation and advertising claims. (Vivos Reply at 5 n.2, Dkt. 88)

false advertising claim under the Lanham Act, "a plaintiff must establish that: (1) the defendant made a material false statement of fact in a commercial advertisement; (2) the false statement actually deceived or had the tendency to deceive a substantial segment of its audience; and (3) the plaintiff has been or is likely to be injured as a result of the false statement." *Eli Lilly & Co. v. Arla Foods, Inc.*, 893 F.3d 375, 382 (7th Cir. 2018) (citing *Hot Wax*, 191 F.3d at 819). The Seventh Circuit has "recognized two types of actionable statements under the Lanham Act: those that are literally false and those that are literally true but misleading." *Eli Lilly*, 893 F.3d at 382. Statements that are literally false "will necessarily deceive consumers," so "[t]he inquiry asks whether the defendant made an explicit representation of fact that on its face conflicts with reality." *Id.* For statements that are literally true but misleading, actual consumer confusion is ordinarily required and typically shown through consumer surveys—early on in the case, however, allegations are sufficient, evidence is not required. *See id.* Rule 9(b)'s heightened pleading standard generally applies to false advertising claims under the Lanham Act. *Vertical Web Media, L.L.C. v. Etailinsights, Inc.*, No. 14 C 3220, 2014 WL 2868789, at *3 (N.D. Ill. June 24, 2014).

The Vivos Defendants argue that the Vivos System course and 2020 Wellness Summit were not "commercial advertising or promotion" as the phrase is used in § 1125(a)(1)(B), the false statements alleged by Ortho-Tain are not actionable, and Ortho-Tain's allegations generally do not satisfy the heightened pleading standard of Rule 9(b).

---

(*comparing* Compl. ¶¶ 49, 90 (citing 1988 version of Lanham Act), *with* 15 U.S.C. § 1125(a)(1)(A) & (B) (2020)). Adding to the confusion, while the language of the Complaint appears to invoke the false designation provision, § 1125(a)(1)(A), (*see* Compl. ¶¶ 58, 62, 137, 158, 160) (referring to false designation of source or origin), Ortho-Tain's response includes arguments relating to both provisions, §§ 1125(a)(1)(A) and (B), (see Resp. at 9-10, 13, Dkt. 81) (referring to both types of claims but shifting focus of argument to elements of false advertising). While Ortho-Tain's failure to clearly articulate the exact legal theory on which the Lanham Act claims are based is certainly unhelpful, it is not necessarily grounds for dismissal. *See Johnson v. Shelby*, 574 U.S. 10, 11 (2014) ("Federal pleading rules . . . do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted.").

First, the Court disagrees with their contention that Vivos' events did not constitute "commercial advertising or promotion" because the events were described in the Complaint as "seminars" and "continuing education courses." As "commercial advertising or promotion" is used in § 1125(a)(1)(B), the Seventh Circuit has held that the phase is not as broad as commercial speech under the First Amendment; and instead that advertising "is a form of promotion to anonymous recipients, as distinguished from face-to-face communication." *First Health Grp. Corp. v. BCE Emergis Corp.*, 269 F.3d 800, 803 (7th Cir. 2001). Thus, rather than treating "'commercial advertising or promotion' as synonymous with all commercial speech, [the district court should] conduct the inquiry necessary to determine whether [the alleged wrongful conduct] entailed promotional material disseminated to anonymous recipients." *Id.* at 804. Examples of statements that are not commercial advertising or promotions for purposes of a Lanham Act false advertising claim include communications made by business executives and lawyers during contract negotiations over a conference table, *id.* at 804, letters sent directly to customers by a company, *ISI Int'l, Inc. v. Borden Ladner Gervais L.L.P.,* 316 F.3d 731, 733 (7th Cir. 2003), and personal communications made by a preexisting athletics equipment supplier to educational institutions, *McDavid Knee Guard, Inc. v. Nike USA, Inc.*, No. 08 C 6584, 2010 WL 3000178, at *5 (N.D. Ill. July 28, 2010).

As an initial matter, the Court notes that Ortho-Tain's use of "seminar" and "continuing education course," appears to come from Vivos' own publications, as that is the context in which they are first used. (Compl. ¶¶ 29, 33 & Ex. C). In any event, those words are only titles and do not mean that Vivos' events did not include commercial advertising or promotion. Ortho-Tain alleges that the Vivos System course was presented via online broadcast and live to in-person attendees on at least 26 occasions, the 2020 Wellness Summit was a multi-date online recorded

10

presentation that thousands of medical professionals registered for, and the parent webinar was made available online. (*Id.* ¶¶ 29, 33-34, 91-92, 153-54)). At the pleadings stage, these allegations are sufficient to give rise to the inference that Vivos' presentations were not solely "face-to-face," did not involve the type of direct and personal communications courts have held fall outside the meaning of "commercial advertising or promotion," and may have included an "anonymous" online audience. The determination of whether Vivos' presentations were made to "anonymous recipients, as distinguished from face-to-face communication," requires a factual inquiry that is simply inappropriate for a Rule 12(b)(6) dismissal motion. *See First Health*, 269 F.3d at 803-04.

The Court also disagrees with the Vivos Defendants' argument that Ortho-Tain has not sufficiently alleged false or misleading statements of fact to satisfy Rule 9(b). Ortho-Tain alleges that: Drs. Kraft and Miraglia presented at the Vivos System course and 2020 Wellness Summit (which are examples of several other presentations in the series); the slides used during their presentations were labeled with Vivos' name/logo; the slides contained information about cases studies in which patients obtained favorable results using Ortho-Tain's products; no credit was given to Ortho-Tain; instead, the slides were shown while the presenters explained the use of Vivos' products to obtains the results achieved through the case studies. To the extent that these allegations do not collectively describe statements that are literally false (which they likely do), they certainly are misleading. If not explicit, the clear inference to be drawn by attendees was that the case studies showed results achieved by Vivos' products. The Complaint identifies the speakers, provides the dates and locations of the presentations, quotes the speakers, and attaches photographic evidence of the events and information presented. This is sufficient particularity to meet the requirements of Rule 9(b).

11

Furthermore, the statements made in Vivos' publications about creating "revolutionary technology" and the "first-ever hope for a lasting solution to the problem of sleep apnea" are not "mere puffery" as the Vivo Defendants contend. The products at issue here are orthodontic appliances used by medical professionals to treat specific conditions. In the context of a scientific field made of up highly educated individuals, it is reasonable to infer at the pleading stage that "revolutionary" and "first-ever" carry specific meanings as to the novel nature or method of the appliance being described. Put another way, when the terms "revolutionary" and "first-ever" are used with dentists to describe an orthodontic appliance, they contain factual content that represents the nature, characteristics, and qualities of the products on which the dentists would rely. *Cf. Martin v. Wendy's Int'l, Inc.*, 183 F. Supp. 3d 925, 934 (N.D. Ill. 2016) (use of the term "record-breaking" to describe footbag (aka Hacky Sack) sold by Wendy's and Guiness with kid's meals constituted non-actionable puffery because it conveyed no factual content on which consumers would rely).

In sum, although the Court agrees that the Complaint does not adequately plead a claim for false designation of origin, Ortho-Tain has stated a claim for false advertising. Accordingly, Counts I and VI of the Complaint may proceed as to false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

**II.    Civil Conspiracy Claims**

In Counts II-IV and VII-X, Ortho-Tain asserts civil conspiracy claims against Vivos, Benco, Drs. Musso and Miraglia, and Huntsman based on the alleged conduct supporting the Lanham Act claims. To state a claim for civil conspiracy under Illinois law, a plaintiff must allege: "(1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of

12

which one of the conspirators committed an overt tortious or unlawful act." *Fritz v. Johnston*, 209 Ill. 2d 302, 317 (2004) (citing *Adcock v. Brakegate, Ltd.,* 164 Ill. 2d 54, 62-63 (1994)); see also *Turner v. Hirschbach Motor Lines*, 854 F.3d 926, 930 (7th Cir. 2017) (combining the first two elements as "an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means") (citing *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007)).

To survive dismissal, "the complaint must contain more than the conclusion that there was a conspiracy, it must allege specific facts from which the existence of a conspiracy may properly be inferred." *Fritz*, 209 Ill. 2d at 318. Because there is almost never direct proof of a conspiracy, plaintiffs usually rely on "circumstantial evidence and inferences drawn from evidence, coupled with common-sense knowledge of the behavior of persons in similar circumstances." *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 134 (1999) (quoting *Adcock,* 164 Ill. 2d at 66). "A defendant who understands the general objectives of the conspiratorial scheme, accepts them, and agrees, either explicitly or implicitly to do its part to further those objectives . . . is liable as a conspirator[,]" but "[a] defendant who innocently performs an act which happens to fortuitously further the tortious purpose of another is not liable under the theory of civil conspiracy." *Adcock,* 164 Ill.2d at 54, 64. The final element—commission of an overt tortuous or unlawful act—is generally dependent on the plaintiff's ability to sufficiently allege the existence of an underlying wrong. *See Platinumtel Commc'ns, LLC v. Zefcom, LLC*, No. 08 C 1062, 2008 WL 5423606, at *8 (N.D. Ill. Dec. 30, 2008) ("Where the plaintiff has failed to sufficiently allege that an underlying wrong existed, courts will dismiss the corresponding conspiracy claims."). Claims for civil conspiracy based on underlying fraudulent conduct must be plead with particularity under Rule 9(b). *Id.*

Ortho-Tain's conspiracy claims are premised on the existence of an agreement between the Vivos Defendants and Benco to use the case studies of favorable results achieved by Ortho-Tain's products to sell Vivos' products. The Lanham Act violations serve as the underlying tortuous or wrongful conduct committed by one of the conspirators. As to Benco, the Court agrees that the allegations of an agreement to conspire are insufficient. Simply put, there are no allegations that directly connect Benco to the alleged Lanham Act violations. Ortho-Tain points to the agreement between Benco and Vivos to sponsor and promote the Vivos System course and 2020 Wellness Summit, but there are no allegations from which the Court could plausibly conclude that those agreements were not innocent supplier/manufacturer promotional contracts or that Benco understood the objects of the purported conspiratorial scheme. Absent such allegations, the Court cannot say that Benco is not "[a] defendant who innocently performs an act which happens to fortuitously further the tortious purpose of another is not liable under the theory of civil conspiracy." *Adcock,* 164 Ill.2d at 64.

As to the Vivos Defendants, however, the allegations are sufficient to state a claim for civil conspiracy. Although Ortho-Tain did not allege direct evidence of a conspiracy, that is neither unusual nor required. It is enough that Ortho-Tain has alleged that Huntsman and Drs. Musso and Miraglia all had prior access to the Ortho-Tain case studies and later worked together through Vivos to use those studies in the Vivos System course and 2020 Wellness Summit presentations. Taking those well-pleaded factual allegations and drawing reasonable inference from them, the Court has no trouble concluding that it is plausible that those parties combined for the purpose of profiting directly or indirectly by using the Ortho-Tain case studies to sell Vivos' products. As discussed above, the allegations are sufficient to state claims for false advertising under the

14

Lanham Act, so the requirement that the conspiracy be in furtherance of an overt tortuous or unlawful act is satisfied.

To summarize, the allegations are sufficient to state claims for civil conspiracy against Vivos, Drs. Musso and Miraglia, and Huntsman but not Benco. Accordingly, Counts III and VIII are dismissed without prejudice and Counts II, VII, IX, and X may proceed.[6]

### III.  Claim Against Dr. Musso

Setting aside the sufficiency of the civil conspiracy claim in Count IV, Dr. Musso seeks dismissal on the basis that the Court lacks personal jurisdiction over him and venue in the Northern District of Illinois is improper. In support of these arguments, Dr. Musso submitted a declaration stating, among other things, that he has never set foot in Illinois, has no contacts with Illinois, has never owned or operated a business or advertised in Illinois, does not have any registered agents, professional licenses, or employees in Illinois, and has never participated in litigation of any kind in Illinois. (*See* Vivos Mot., Ex. A, Dkt. 79-2).

Rule 12(b)(2) permits a defendant to move for dismissal based on lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). A federal district court may exercise personal jurisdiction over a nonresident defendant only if the defendant has "certain minimum contacts" with the jurisdiction such that litigating there "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). There are two types of personal jurisdiction: general and specific. *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010). Because Ortho-Tain does not assert that there is general jurisdiction over Dr. Musso, the Court need only consider whether there is specific personal jurisdiction. "To decide whether specific personal jurisdiction may be exercised, a court must engage in three distinct steps

---

[6] As discussed *infra*, the civil conspiracy claim against Dr. Musso (Count IV) is dismissed for other reasons.

in the following order: (1) identify the contacts the defendant has with the forum; (2) analyze whether these contacts meet constitutional minimums and whether exercising jurisdiction on the basis of these minimum contacts sufficiently comports with fairness and justice; (3) determine whether the sufficient minimum contacts, if any, arise out of or are related to the causes of action involved in the suit." *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 944 (7th Cir. 2000). If the second step is not satisfied, the court need not proceed to the third. *Id.* "The plaintiff bears the burden of demonstrating personal jurisdiction." *Id.* at 939.

Ortho-Tain argues that the Court should decline to dismiss the claim against Dr. Musso for lack of personal jurisdiction for a plethora of reasons: he was a "Clinical Advisor" for Vivos; he supplied Vivos with the Ortho-Tain case study information; Vivos' courses, seminars, and other materials were made available to consumers in every state, including Illinois; at least one of the 4,300 dentists who registered for a Vivos event was from Illinois; Benco's sales territory included Chicagoland; Ortho-Tain's contract with Dr. Kraft contains an Illinois forum-selection clause; and Dr. Kraft used the case studies from Dr. Musso in the February 7, 2020 presentation in St. Louis; it is reasonable to infer that dentists who attended the St. Louis presentation were either from Illinois or served Illinois patients; "defendants directed their marketing and sales activities at customers in Illinois[;] and that the claims arise out of or relate to those activities." (Resp. to Vivos Mot. at 14-15, Dkt. 82). In addition, Ortho-Tain suggests that additional discovery might show that "Dr. Musso's agreement and provision of marketing materials was merely an intermediate step in a more substantial relationship with Illinois." (*Id.* at 14).

A fundamental flaw persists throughout the reasons offered by Ortho-Tain—none involve direct contacts with Illinois that Dr. Musso himself created. *See Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("the relationship [with the forum state] must arise out of contacts that the 'defendant

16

*himself*' creates with the forum State.") (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985) (emphasis in original). Each contact with Illinois is at least one or two steps removed from Dr. Musso and does not involve any action that Dr. Musso directed towards the State. Furthermore, many of the proffered reasons require the Court to speculate (not infer) about facts that are not alleged in the Complaint (e.g., the residency of attendee dentists or their patients and Dr. Musso's knowledge of those facts). Thus, Ortho-Tain has neither pointed to allegations in the Complaint nor supplied additional evidentiary material that allows the Court to assert personal jurisdiction over Dr. Musso. The bottom line is that Ortho-Tain's theory of specific personal jurisdiction over Dr. Musso is simply too attenuated to pass constitutional muster. For these reasons, Count IV is dismissed without prejudice. Because lack of personal jurisdiction provides an independent basis for dismissal of the claim against Dr. Musso, the Court need not consider whether venue is proper.

**IV.** **Breach of Contract Claim Against Huntsman**

In Count XI of the Complaint, Ortho-Tain asserts a claim for breach of contract against Huntsman based on his alleged violation of the NDA. To state a claim for breach of contract under Illinois law, a plaintiff must allege "the existence of a valid and enforceable contract, performance by the plaintiff, breach of the contract by the defendant, and resultant damages or injury to the plaintiff." *Mission Measurement Corp. v. Blackbaud, Inc.*, 287 F. Supp. 3d 691, 715 (N.D. Ill. 2017).

Huntsman's argument for dismissal of Ortho-Tain's claim for breach of the NDA is two-fold. First, Huntsman asserts that he signed the agreement as an authorized representative for Xenith, so it cannot allege the existence of a valid and enforceable contract *against him*. The Court summarily rejects this argument because of the discrepancies noted above, *supra* 2 n.2, with

17

respect to who was a party to the contract. Because the contract itself is ambiguous as to who was a party, there are factual issued that preclude dismissal based on that contention. Second, Huntsman argues that the contract's confidentiality provisions expired long before any allegations of improper disclosure. The NDA required confidentiality for three years following initial disclosure, (NDA art. 3), and Ortho-Tain alleges that it first provided confidential information in June 2014, (Compl. ¶ 22). Thus, the duty of confidentiality would have expired in June 2017, and there are no allegations of improper disclosure before that time in the Complaint. (*See* Compl. ¶¶ 151, 158) (generally alleging unlawful dissemination of confidential information without specifying timeframe). The only other allegations of improper disclosure relate to the Vivos' System course and 2020 Wellness Summit, both of which took place in 2020. Because Ortho-Tain did not specifically respond to this argument, the opportunity to oppose it has effectively been forfeited or waived. *See Alioto v. Town of Lisbon,* 651 F.3d 715, 721 (7th Cir. 2011). In any event, the Court agrees with Huntsman that the allegations of the Complaint are insufficient because there is no allegation that he disclosed confidential information within the relevant timeframe. As such, Count XI is dismissed without prejudice.

## CONCLUSION

For the reasons stated above, Defendants' motions to dismiss are granted in part and denied in part: (1) Counts I and VI are dismissed as to false designation of origin only; (2) Counts III, VIII, and XI are dismissed for failure to state a claim; and (3) Count IV is dismissed for lack of personal jurisdiction. All other claims may proceed.

The Court notes that the instant case and the Colorado District Court Action were both filed in 2020 and after four years have not yet emerged from the pleading stage. While some of the delay is certainly attributable to the time it has taken courts to issue rulings on contested

motions, the parties' litigation strategies have also played a role. Perhaps it is time for all affected parties to seriously consider whether attempting to reach a global settlement is a better use of their time and money and the scarce resources of the judiciary. Until that happens, this litigation will go forward. Defendants are ordered to file their answers to the surviving claims by 9/13/24. All parties are directed to meet and confer for a Rule 26(f) scheduling conference and file a proposed discovery plan by 9/27/24.

**DATED**: August 23, 2024　　　　　　　　　　**ENTERED**:

_LaShonda A. Hunt_
LASHONDA A. HUNT
United States District Judge